(58 App. Div. 541.)

PEOPLE ex rel. LODHOLZ v. KNOX et al., Commissioners.

(Supreme Court, Appellate Division, First Department. March 22. 1901.)

1. MANDAMUS—ALLEGATIONS CONTRADICTED—PRESUMPTIONS.

On a motion for mandamus to compel civil service commissioners to certify that relator's salary had been properly increased, all facts alleged by relator, and contradicted by defendant, would be taken not to exist, since such motion could only be granted on undisputed facts.

2. SAME—CIVIL SERVICE—CLASSIFICATION—SALARY — INCREASE — PROMOTION — EXAMINATION—TRADES GAUGED BY POSITION, NOT SALARY—LEVELER—DRAFTSMAN.

Laws 1899. c. 370, § 13, provides that the civil service commissioners shall not appoint or transfer a person to any municipal position in the competitive class unless he has passed an examination therefor. Section 15 provides that an increase in the salary of any person beyond the limit fixed for the grade in which such position is classified shall be deemed a promotion. The commissioners' rules prescribe that "positions in the competitive class are graded according to compensation, as follows: * * * Third Grade—Leveler. Annual compensation of more than $1,200, but not more than $1,320. Fourth Grade—Transitman, Draftsman. Annual compensation of more than $1,320. but not more than $1,800." *Held*, that one who had passed an examination for topographical draftsman. and was appointed to and performed the duties of such position for over three years, but whose salary had been fixed at $1,320 a year, was a draftsman, and not a leveler, and an increase in his salary to the limit

allowed draftsmen was not a promotion requiring another competitive examination, and mandamus should issue to compel the commissioners to certify that such increase was properly made in pursuance of law.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from special term, New York county.

Mandamus by the people, on relation of Abraham Lodholz, against Charles H. Knox and others, civil service commissioners. From an order granting a peremptory writ, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

William B. Crowell, for appellants.

Charles E. Clarke, for respondent.

RUMSEY, J. The relator, having passed a competitive examination for the position of topographical draftsman in the office of the commissioner of street improvements of the Twenty-Third and Twenty-Fourth wards of the city of New York, received a permanent appointment to that office on the 15th of July, 1897. On the 1st of January, 1898, upon the organization of the city of Greater New York, he was transferred to the department of sewers as a topographical draftsman, and entered upon the performance of his duties as such, and has continued to be a topographical draftsman down to this time. When he was appointed to that position, in 1897, his salary was $1,320 a year. In the month of October, 1900, the commissioner of sewers increased his salary to $1,800 a year, to take effect on the 1st of November, 1900. The increased salary cannot be paid, however, until the civil service commissioners have certified that the increase was properly made in pursuance of law. This they refused to do, claiming that the increase in salary amounted in fact to a promotion from one class to another, under the White law, which could not be permitted without a new civil service examination. The relator thereupon brought this proceeding to procure a writ of mandamus requiring the civil service commissioners to certify upon the pay rolls that his salary had been properly increased, so that it might be paid to him.

As a motion of this kind can only be granted if the facts are undisputed, we must assume the existence of the facts sworn to on behalf of the defendants, and, if they contradict anything which appears in the moving papers, the things thus contradicted must, for the purposes of this application, be taken not to exist. People v. New York Cent. & H. R. R. Co., 156 N. Y. 570, 51 N. E. 312.

It appears from the affidavits presented upon the part of the civil service commissioners that, in pursuance of the duty imposed upon them by section 10 of the White law (chapter 370, Laws 1899), they have prescribed rules for the classification of places and positions in the classified service and for appointment therein. Those rules are set out in the papers, and, so far as it is necessary to refer to them, they are as follows:

"Positions in the competitive class are graded according to the fixed limit of compensation, as follows: * * *. Group 3. For all architectural, civil, or mechanical engineering, positions as follows: * * * Third Grade—

Leveler. Annual compensation of more than $1,200, but not more than $1,320. Fourth Grade—Transitman or computer, draftsman. Annual compensation of more than $1,320, but not more than $1,800."

The civil service commissioners insist that, because the relator had been receiving a salary of $1,320 and not more, he is therefore in the third grade named, which includes only the position of leveler, and not in the fourth grade, in which draftsmen are included. Their claim is substantially that the grade is fixed by the salary, and not by the position, and, no matter what may be the office to which a man has been appointed, if he receives a salary of a certain amount he is not deemed, for purposes of classification, to hold an office in the position to which he has been appointed, but an office in the grade in which that amount of salary places him. For instance, according to the claim of the defendants, if a man has been appointed to the office of principal assistant engineer, which is in the sixth grade, and of which the compensation may be $3,000 a year, and for some purpose his compensation should be fixed temporarily at $900, which is the compensation of the office of axman, he would be an axman, and not a principal assistant engineer, and could not receive any larger salary than $900 until he had been re-examined for the position of principal assistant engineer, for which he had already just passed a civil service examination, although he had been appointed to and had been performing the duties of that office. The relator, on the contrary, insists that the grade of the man is fixed by the position which he occupies and for which he has passed a civil service examination, and that, although when he enters upon that position he does not receive the minimum amount of salary allotted to it, yet it may be increased to the maximum amount of that grade without its being a promotion. Which of these two contentions is correct is the question for determination.

By section 10 of the White act, the civil service commissioners were called upon to prescribe rules for the classification of the offices, places, and employments, but not the salaries, in the classified service. Those rules had in view the establishment of positions with relation to each other, so that it might be known what examination was to be required for each position, and what should constitute a promotion from one position to another, so as to require a new examination. The statute prescribed that the classification should not be inconsistent with its provisions. The competitive class in which the relator is classified was defined, and the regulations with respect to examination for it and appointment in it were prescribed by section 13 of the act. An appointment of any person in that class was forbidden, unless he should have previously passed an open competitive examination equivalent to that required for the position to which he was to be appointed, and it was especially prescribed by that section that no person should be appointed or employed under any title not appropriate to the duties to be performed, nor should he be transferred to perform the duties of another position, subject to competition, unless he had been examined for it.

It is alleged by the relator, and it is undisputed, that he passed an examination for topographical draftsman; that he was appointed to

that position, and did its duties; and that he was never appointed to the position of leveler, nor did he ever perform a leveler's duties, or ever occupy that position in any way. Indeed, having been appointed to the position of topographical draftsman, it was expressly forbidden by the section of the statute mentioned above that he should be permitted to be employed as a leveler, because the duties of leveler were not those of the position to which he had been appointed, and which he was called upon to do. It is quite clear, therefore, that, with respect to the matters spoken of in section 13 of the statute, the legislature had in view, not the salary to be paid to any man, but the duties which he was called upon to perform in respect of which his examination was to be had, and the position to which he was to be appointed, which must in name correspond with and describe the duties he was to do and as to which his examination was had. The matter of the salary was something which had nothing whatever to do with the naming of the position or the examination necessary to obtain it.

Section 15 of the law is the one which the civil service commissioners rely upon as preventing the increase of the relator's salary to the highest amount permitted for a topographical draftsman. The statute prescribes that, for the purposes of that section, an increase in the salary of any person holding an office or position beyond the limit fixed for the grade in which such office or position is classified shall be deemed a promotion; and they say, because the relator's salary was increased beyond the limit fixed for the grade in which his salary classified him, he must be deemed to have been promoted, and it was necessary that he should submit to another examination. But it will be noticed that the statute does not say that for the purposes of promotion the increase of salary shall be beyond the limit of the grade in which the salary is classified, but beyond the limit of the grade in which the position is classified. The criterion is not the salary which has been paid, but the grade in which the position is classified. It is evident that this section has in view, not the salary which any man shall receive, except as incidental to the position, but that with respect to promotions from one grade to another the thing to be considered is the position which he held. It is the position which fixes the grade he is in, not the salary. For instance, the statute provides that vacancies shall be filled from among persons holding a lower grade in the group in which the vacancy exists. It does not say that it is to be filled by persons having a salary less than the minimum of the grade in which the vacancy exists. Suppose there should be a vacancy in this particular position. The relator was appointed a topographical draftsman, which is in the fourth grade. Is the vacancy in his position to be filled by a promotion from the office of leveler, which is in the third grade next below, or by promotion from the position of chainman or rodman, who are of the second grade? Clearly, it is the position, and not the salary, which fixes the grade from which a promotion is to be made,—which shows that what the legislature evidently had in view was that the grading should be determined, not by the pay received, but by the duties performed.

The increase in salary, called a "promotion," is an increase beyond the maximum for the grade in which the position is classified. The important fact is that by the increase the man receives a salary larger than can properly be paid to one holding his position. The fact that he formerly had a less salary than the one which might have been paid to one in his position is not made controlling by the law. Although the salary of this man was fixed at $1,320 at first, nevertheless he did not cease to be a topographical draftsman when the commissioners graded his salary below the minimum to one in his position. He still had the appointment of draftsman and did the work, and, when his salary was increased to $1,800, that was not beyond the limit fixed for the grade in which his position was classified, although it was beyond the limit of the salary in the third grade. But his position was not in the third grade; it was in the fourth grade; and, whatever salary he might have been receiving, the civil service commissioners having fixed the maximum for his grade at $1,800, they cannot say, when his salary is increased to that sum, that, as he has been receiving $1,320, the salary of a leveler, he therefore was a leveler, and the increase was a promotion, which the rules forbade without a new examination. There is nothing in the law which I can find that authorizes the commissioners to consider the salary to be paid. All they are to classify is the position. There is no reason why a person who should appoint a topographical draftsman upon probation should not fix his salary during the probationary period at $1,200, without making it incumbent upon him to pass another examination when his appointment is made permanent at the maximum salary allotted to his position. If he is appointed a draftsman, he is a draftsman, no matter what his salary may be. While to him the salary is a very important matter, yet, so far as the city is concerned, the important thing is the position which he occupies. He is examined with reference to the position he is to fill, not the salary he is to receive. The relator passed an examination for the position of topographical draftsman. It does not appear that he was competent to fill the position of leveler. We have, therefore, this situation of affairs: The relator was a draftsman; he was appointed as such; he did the duties of that office; he never did the duties of a leveler; by the civil service rules, his position as draftsman is classified in the fourth grade, and the commissioners have seen fit to fix the minimum and maximum salary for that grade. Have they the power, disregarding his duties, to say that, as his salary is less than that minimum, he is in fact a leveler, and that he should not be paid the proper salary of his position as draftsman without passing a new examination, although he has already just passed a proper and sufficient one for that place? We do not think that they have, and for these reasons the order must be affirmed, with $50 costs and disbursements.

PATTERSON and O'BRIEN, JJ., concur.

INGRAHAM, J. I do not concur in the affirmance of this order. The appointment of the relator as a topographical draftsman in the

office of the commissioner of street improvements, in July, 1897, did not vest him with any particular office. He became an employé of the department, and continued as such until he was transferred, in January 1, 1898, to the department of sewers, under the new charter of the city of New York, and since that date he has continued as an employé in the department of sewers. When the civil service act of 1899 was passed (chapter 370, Laws 1899) the relator was thus employed as a topographical draftsman in the department of sewers, receiving as his compensation $1,320 per year. By section 10 of the civil service act, the mayor of each city in the state was required to appoint suitable persons to prescribe, amend, and enforce rules for the classification of the officers, places, and employments in the classified service of such city, and, in pursuance of this provision, the civil service commissioners appointed for the city of New York made rules for such classification. By rule 37, they provided "that an increase in salary or other compensation of any person holding an office or position, within the scope of these rules, beyond the limit fixed for the grade in which such office or position is classified, shall be deemed a promotion"; and then provided, as a rule for the classification of those holding positions in the service, that the positions they were to hold under this classification were regulated by the amount of compensation that they received; and thus architectural, civil, or mechanical engineering positions, which were included within group 3, were classified as follows: In the first grade were placed those whose position was that of axman, and in that grade were placed those holding positions of this character who received an annual compensation of $900 or less. In the second grade were the chainmen or rodmen, and in this grade were placed those holding positions within this group who received an annual compensation of more than $900, but not more than $1,200. In the third grade were those designated as levelers, and in that grade were placed those holding positions included in group 3, who received an annual compensation of more than $1,200, but not more than $1,320. And in the fourth grade were those designated as transitmen or computers or draftsmen, and in that grade were placed those holding positions included in group 3, who received an annual compensation of more than $1,320, but not more than $1,800.

It seems to me that this rule was valid, and that, the commissioners having classified those persons holding architectural, civil, or mechanical engineering positions, that classification was binding upon all of the city officials. In none of these grades is placed the position of topographical draftsman; and, whatever position this relator had by virtue of his original appointment as topographical draftsman, after this classification took place he was classified in the third grade, as a leveler, with an annual compensation of $1,320 per year. There was nothing in these papers to show that the duties performed by topographical draftsmen are different from those of a leveler, but, whatever the position or employment was called to which the relator was appointed, when the positions were classified by the civil service commissioners he occupied under that classification the position of leveler, and was entitled to receive the compensa-

tion allowed to persons holding positions within that grade. The commissioners, who were authorized to make this classification, have never classified the relator in any other class than that designated by them as levelers, and the relator necessarily falls within the third grade. He certainly is not within the fourth grade, as, when the classification was made, he did not receive a salary of more than $1,320 a year, and it was only those occupying a position in the group, who received an annual compensation of more than $1,320, who were included in the fourth grade. The relator, therefore, it seems to me, is either classified in group 3 or is not classified at all. In either case, the increase of his salary was a promotion, within section 15 of chapter 370 of the Laws of 1899, which provides: "For the purposes of this section an increase in the salary or other compensation of any person holding an office or position within the scope of the rules in force hereunder beyond the limit fixed for the grade in which such office or position is classified, shall be deemed a promotion;" and promotions shall be based upon merit and competition, and upon the superior qualifications of the person promoted, as shown by his previous service, due weight being given to seniority.

I think, therefore, the commissioners were justified in refusing to certify the salary of the relator at the increased rate, and that the order appealed from should be reversed.

VAN BRUNT, P. J., concurs.