Smith instrument, an interlocutory judgment should have been awarded to the plaintiff.

We are informed by the briefs that the other defendants whose demurrers were overruled have since answered precisely in form as did the Audubon Bank. Hence the decision of this motion will decide necessarily their cases also. The claims of these judgment creditors aggregate over $40,000 and interest. We should note here that the respondent cites in its support an old case in this department, Bowery Nat. Bank v. Duncan, 12 Hun, 405, opinion by Gilbert, J., which strongly supports its contention that by the mere filing of its transcript of judgment it acquired a lien on Queen's equity of redemption. We can find no subsequent citation of this case, but in any event it does not touch the question of the subordination of such lien to the prior equitable mortgage.

The order should be reversed, with $10 costs and disbursements, and the motion for judgment on the pleadings granted to the extent of awarding to the plaintiff an interlocutory judgment for the foreclosure of its equitable mortgage and a determination of the amount due thereon, with $10 costs. All concur.

---

(159 App. Div. 275.)

### In re RUDD.

(Supreme Court, Appellate Division, Second Department. November 21, 1913.)

1. OFFICERS (§ 69*)—CIVIL SERVICE EMPLOYÉS—REDUCTION OF SALARY—GRADE OF EMPLOYÉ.

Civil Service Rule 7, subd. 3, provides that the classification of all persons shall be governed solely by their duties and functions, and subdivision 4 provides that the positions in each subdivision of each group shall be divided into grades based upon the rates of annual compensation, and that grade 8 shall include all positions paying more than $1,500, but not more than $1,800 per annum. Civil Service Law, § 41, provides that all clerks in the state department shall be classified in one of the following grades according to legislative appropriations made for such purpose, and section 42 provides that the salaries of employés in the eighth grade shall not exceed $1,800. Laws 1896, c. 772, § 3, as amended by Laws 1900, c. 126, empowers the district attorney to appoint one chief clerk and five additional clerks, whose compensation shall not exceed $2,000 and shall be "fixed and determined by" the district attorney. *Held*, that the grade of a civil service employé is determined by his duties, and not by the amount of his salary; and hence the reduction by the district attorney of the salary of a clerical employé, whose duties placed him in the eighth grade, from $1,700 to $1,000 a year, was not illegal as being a removal of such employé from his classified grade, and was within the power of the district attorney.

[Ed. Note.—For other cases, see Officers, Dec. Dig. § 69.*]

2. OFFICERS (§ 9*)—STATUTES—REPEAL BY CIVIL SERVICE LAW.

Since Laws 1896, c. 772, § 3, as amended by Laws 1900, c. 126, empowering the district attorney to appoint a certain number of clerks and fix their compensation, related to a particular office, it was not repealed by the Civil Service Law.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 11; Dec. Dig. § 9.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Kings County.

In the matter of the application of Stephen A. Rudd for a writ of mandamus against James C. Cropsey, as District Attorney of the County of Kings. From an order granting a peremptory writ, defendant appeals. Reversed, and writ dismissed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE-TON, and PUTNAM, JJ.

Hersey Egginton, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for appellant.

Robert H. Elder, of New York City (Otho S. Bowling, of New York City, on the brief), for respondent.

THOMAS, J. The question is whether the district attorney of the county of Kings may reduce the salary of Rudd, a clerk, from $1,700 to $1,000 per annum. The proceeding is to compel the district attorney to certify the salary on the basis of the larger sum. It is not proved whether a hearing was afforded. But I regard that question as irrelevant to the inquiry. The applicant was, in 1904, appointed stenographer and private secretary to a former district attorney, which place was then exempt, and in 1907 he was transferred to a similar place in the class designated as competitive at a salary of $1,500, which in 1909 was increased by the district attorney to $1,700. In 1911, the same district attorney appointed him as bond clerk at $1,700 per annum, upon the certificate of the State Civil Service Commission of a qualifying examination, although the position is in the competitive class. Such appointment placed Rudd in the grade designated as "Eighth" under the Civil Service Rules. Civil Service Rule 7 is (subdivisions 3 and 4):

"(3) The classification of all positions shall be governed solely by the respective duties and functions of such positions. (4) For the purpose of orderly arrangement and of regulated promotion, the positions in each subdivision of each group shall be divided into grades based upon the rates of annual compensation. * * * Grade 8. All positions, the compensation of which is at the rate of more than $1,500, but not more than $1,800 per annum."

The State Civil Service Law (Consol. Laws 1909, c. 7) § 41, is:

"All clerks, * * * or other employés performing clerical service in the state departments, * * * shall be classified in one of the following grades, in accordance with the appropriations made by the legislature for such purpose."

Section 42:

"Salaries for each grade. The annual salaries of employés for each grade shall not be to exceed the following: * * * Eighth grade, eighteen hundred dollars."

Does grade depend on the nature of the duties or the salary?

[1] The decision is that the nature of the duties, not the salary, fixes the grade. People ex rel. Lodholz v. Knox, 58 App. Div. 541, 69 N. Y. Supp. 602, affirmed 167 N. Y. 620, 60 N. E. 1118. In the case at bar the district attorney has reduced the salary from $1,700 (by salaries, eighth grade) to $1,000 (by salaries, sixth grade). But the posi-

tion and duties remain the same. But if the grade depends upon the nature of the position and not the amount of the salary, there is no change of grade. Assuming that such is the case, the question is whether the district attorney can reduce the salary. The statute (chapter 772, § 3, L. 1896, as amended by chapter 126, L. 1900) empowers the district attorney to appoint "one chief clerk, * * * and five additional clerks, whose compensation ·shall not exceed two thousand dollars each per annum, * * * said compensation * * *. to be fixed and determined by" the district attorney. That law was amended by chapter 556, L. 1901, chapter 409, L. 1911, and by chapter 401, L. 1913. The amendment enables the force to be increased, but continues the power of the district attorney to fix the several salaries.

[2] The statute relates to a particular office and was not repealed by the Civil Service Law. People ex rel. Lee v. Waring, 1 App. Div. 594, 597, 37 N. Y. Supp. 478. Moreover, its re-enactment since the Civil Service Law came in shows that it is not affected as to its terms by that law. But the decision is that the district attorney may fix the salary, but may not reduce it, for, it is urged, he might reduce it so as to amount to a removal, and that "the reduction was a removal from the grade or position held by the relator." But how could there be a removal from a grade, if grade does not depend on salary? There is no statute against such reduction. Observe the statutes. An earlier statute (section 3, c. 186, L. 1898) prescribed procedure for removal or reduction, but the section was repealed by chapter 370, L. 1899 (see schedule), and, by chapter 697, § 21, L. 1904, the procedure was limited to removal. So there is no positive law against reduction. In such case, power to fix a salary carries power to reduce it. Sauerbrunn v. Board of Education, 150 App. Div. 407, 135 N. Y. Supp. 85, affirmed on opinion below 208 N. Y. 550, 101 N. E. 1120, when the board of aldermen, empowered by section 56, Greater New York Charter, to fix salaries of every officer or person paid out of the city treasury, fixed the salary of a draughtsman on June 9, 1903, at $45 per week, and on June 30th following fixed it at $35 per week. See Buckbee v. Board of Education, 115 App. Div. 366, 100 N. Y. Supp. 943, affirmed 187 N. Y. 544, 80 N. E. 1106. In People ex rel. Stokes v. Tully, 108 App. Div. 345, 95 N. Y. Supp. 916, 1153, and Holleran v. Creelman, 148 App. Div. 121, 122, 132 N. Y. Supp. 176, the power of the board of aldermen to increase the salary was recognized. In my judgment, if the district attorney is enabled to fix the compensation of the members of his force, his power does not cease when he has once exercised it. The persons are his immediate subordinates, and their earning capacities are within the test of his experience. He is given a gross sum for administering his office. It would be intolerable if he must observe a clerk worth only $1,000 receiving $1,700 and be powerless to protect the public against the waste and to give his office the benefit of an efficient use of the money. This is not a case where an officer remotely related to an employé is selected by law to fix his salary, but where the principal adjusts compensation to the services of his subordinates, who act immediately for him and under his command. I see no logical support for the order, which is based on an

apprehension that a superior will make the compensation so unequal to the service rendered that his subordinate will be compelled to retire. The order should be reversed, and the writ dismissed.

Order reversed and writ dismissed, without costs. All concur.