(89 App. Div. 355.)

CUSACK v. BOARD OF EDUCATION OF CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department.   December 30, 1903.)

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE—DEPRIVATION OF EMPLOYMENT—PREFERENCE.

Under Greater New York Charter, § 1090 (Laws 1897, p. 394, c. 378, as amended by Laws 1901, p. 472, c. 466), providing that, in case of the discontinuance of any school, teachers who may be thereby deprived of employment shall be preferred in appointments to be made, a teacher employed in both day and night schools, whose night employment was terminated by discontinuance of the school in which he was employed, but whose employment in day school continued, was not "deprived of employment" so as to be entitled to preference in appointment.

Appeal from Special Term, Kings County.

Application by James Cusack against the Board of Education of the city of New York and others for a writ of mandamus to compel

respondents to appoint relator principal of an evening school. From an order denying the writ, relator appeals. Affirmed.

See 79 N. Y. Supp. 803.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCH-BERG, and HOOKER, JJ.

Conrad Saxe Keyes, for appellant.

James McKeen (Walter S. Brewster, on the brief), for respondents.

HIRSCHBERG, J. It seems to be conceded that the relator is the principal of one of the public day schools in the city of New York. For some time prior to the month of May, 1902, he was also the principal of one of the evening schools in the borough of Brooklyn. There were then four of such evening schools in that borough receiving both men and women pupils, but the system of night schools was shortly afterwards reorganized, and two of such schools have since been maintained exclusively for men and two for women, in consequence of which change the relator lost his position as night school teacher. The night school of which he was formerly principal has been devoted since the reorganization to the education of women under the charge of a woman principal. He instituted legal proceedings shortly after the change to compel his reinstatement by an appointment to the position of principal of one of the two men's evening high schools, but his application was finally denied on the ground that the reorganization referred to was a lawful abolition of the position which he formerly held as the principal of an evening high school for the education of pupils of both sexes. See Matter of Cusack v. Board of Education, 174 N. Y. 136, 66 N. E. 677. Pending that litigation a vacancy has occurred in the principalship of each of the two evening schools for men, and the vacancies have been filled by the appointment of other teachers, who are likewise employed in the day schools, and the present application is to compel the relator's appointment to one of the places referred to, under a claim that he is entitled to a preference in appointment by the terms of the city charter. Section 1090 of the Greater New York Charter (chapter 378, p. 394, Laws 1897, as amended by chapter 466, p. 472, Laws 1901), provides, among other things, as follows:

"In case of the consolidation of schools or of the discontinuance of any school, principals and teachers of good standing, who thereby may be deprived of employment, shall be preferred in appointments to be made in any of the schools of the city."

The night school of which the relator was formerly principal, viz., a night school for the education of pupils of both sexes, having been discontinued, he claims the right to be preferred in the appointment as principal of one of the night schools for men, as one who by the discontinuance has been deprived of employment. I do not think the section of the charter quoted applies to his case. While he was, indeed, deprived of a part of his employment by the change referred to, he still remained principal of a day school, and as such remained in the employment of the school authorities. The manifest object of the provision under consideration is to require the re-employment of

worthy teachers, who, by the operation of a change in the school system, may be temporarily thrown out of employment. It is the deprivation of employment which creates the right to a preference, and not a mere reduction in its scope and extent. If any other purpose was intended, it is reasonable to assume that it would have been expressed by some qualifying words indicating that the preference should be exercised in the case of one who, by consolidation of schools or the discontinuance of a school, should be deprived of a part of his employment. The limitations of the preference to those who may be deprived of employment conveys the idea that their condition is to be that of persons who are unemployed, and an individual who is still the principal of a New York City day school can hardly be said to be unemployed.

The rule of construction applicable to a statute of the character of the one now under consideration requires that its operation should not be extended beyond the fair and necessary import of its terms. Statutes which confer preferences or special privileges should receive a strict construction. Black on Interpretation of Laws, § 115. It would certainly not be a strict construction to hold that the words "deprived of employment" mean "reduced in employment," and that, as a consequence, a preference was intended to be conferred not only upon those who should be entirely deprived of employment by a change in the school system, but also upon those who, by the change, might be deprived only of some very insignificant part of their occupation as teachers. A design to confer a general preference in appointment upon the latter class seems unreasonable, and should not be presumed in the absence of compelling language. Moreover, it is to be noted that the wording of the statute furnishes a clear legislative intimation that the changes referred to may not, in every instance, operate to deprive the teachers of employment within the meaning of the provision giving the right to a preference. It is only upon the teachers who "thereby may be deprived of employment" that the preference is conferred. But the statute relates to the discontinuance, as well as to the consolidation, of schools, and it is obvious that a school cannot be discontinued without depriving the teachers in that school of so much of their employment as that school furnished. The necessary inference that a school may be discontinued, and yet that its teachers may not be thereby necessarily deprived of employment within the meaning of the section, indicates that the contemplated deprivation is not pro tanto, but is general or entire. In any other view the scheme of the provision would be, not to secure occupation for worthy teachers, who, without fault of their own, might be actually thrown out of employment, and who, in any enlightened and humane system, would be entitled to the fostering care of the law, but would be confined to the mere purpose of preventing a reduction in the pay of teachers the extent of whose employment in any way and in any degree, no matter how slight, might be affected by the change. In this view it would follow that a teacher who had ample employment under the board of education, but who, in addition, was teaching some one study in a school which was afterwards discontinued, and who was thereby deprived of a very small part of his salary, would, from

85 N.Y.S.—63

that slight deprivation, become entitled not to an opportunity to do
the same teaching as that of which he had been deprived, in another
school, but would become and be at once entitled to "be preferred in
appointments to be made in any of the schools of the city." The
reward seems far too great as compensation for the comparatively
trivial deprivation. Applying this rule further to the appellant's case,
it would have led to a singular result had the board of education dis-
continued the evening schools altogether. By the terms of section
1069 of the Charter, supra (Laws 1901, p. 456, c. 466), the board is
empowered, but not compelled, to maintain these schools, and, had
it discontinued them, it would follow, under the appellant's conten-
tion, that he would have been entitled to a second or additional prin-
cipalship in the day schools to replace the one lost by the discon-
tinuance. This surely is something not contemplated by the statute,
and it aids to support that construction of the law which limits its
operation to those teachers who, by either consolidation or discon-
tinuance of schools, may have been deprived of employment in the
sense that they are thereby rendered idle and unemployed, and who,
if in good standing, are justly and equitably entitled to the privilege
of being restored to usefulness by a preference in the matter of ap-
pointments to be made in any of the schools.

The order should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.