THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE W.
Stokes, Respondent, v. JAMES H. TULLY, as Commissioner of
Public Charities of the City of New York, Appellant.

*Power to fix salaries in New York city — in December, 1903, it was vested in the
board of aldermen — the fact that the salary of the "position" instead of that of
the "officer or person" is so fixed is immaterial — an increase of the salary of a
position in the competitive ungraded class of the civil service does not constitute a
promotion.*

In December, 1903, under section 56 of the revised Greater New York charter
(Laws of 1901, chap. 466, as amd. by Laws of 1902, chap. 435) the board of
aldermen of the city of New York had exclusive power, upon the recommenda-
tion of the board of estimate and apportionment, "to fix the salary of every
officer or person whose compensation is paid out of the city treasury other
than day laborers" and certain other persons therein mentioned.

When such exclusive power is exercised by the board of aldermen the incumbent
of the position affected is entitled to the salary fixed without any further step
on the part of the head of the department to which he is attached.

The fact that the resolution of the board of aldermen, by which the power in
question is exercised, assumes to fix the salary of the "position" instead of
the salary of "every officer or person," as prescribed by section 56 of the
revised Greater New York charter, is immaterial.

A mere increase in the salary of a position in the competitive ungraded class of
the civil service of the city of New York does not constitute a promotion within
the meaning of section 15 of the Civil Service Law (Laws of 1899, chap. 370),
as the position being ungraded, the increase in salary necessarily cannot be
"beyond the limit fixed for the grade in which such office or position is
classified."

APPEAL by the respondent, James H. Tully, as commissioner of
public charities of the city of New York, from an order of the
Supreme Court, made at the New York Special Term and entered
in the office of the clerk of the county of New York on the 18th
day of May, 1905, granting the relator's motion for a peremptory
writ of mandamus requiring the said respondent to forthwith issue
a certificate that the relator is duly employed as an examiner of
charitable institutions of the city of New York at a salary of $1,200
per annum and to attach said certificate to the payroll for
the months of January, February, March, April, May and June,
1904.

*T. Connoly*, for the appellant.

*A. S. Gilbert*, for the respondent.

Order affirmed on the opinion of the court below, with costs.

Present — O'BRIEN, P. J., PATTERSON, INGRAHAM, LAUGHLIN and CLARKE, JJ.

The following is the opinion of the court below:

LEVENTRITT, J.:

This is an application for a peremptory writ of mandamus. Material facts are undisputed. In April, 1900, the relator was appointed from the civil service eligible list to the place of examiner of dependent children for the borough of Manhattan. In November, 1903, the designation was, with the consent of the municipal civil service commission, changed to "Examiner of Charitable Institutions." This position is in what is known as the ungraded service, being specifically there classified. (Rules and Classifications of the Municipal Civil Service Commission, rule 6, subd. 2; appendix, part 1, group 11.) The relator's salary was originally $1,000, and was continued at that figure by a resolution of the board of estimate and apportionment, adopted on April 28, 1902, acting pursuant to the power vested in it for a limited time. (Laws of 1902, chaps. 435, 436.*) In September, 1903, the then commissioner of public charities urged upon the board of estimate and apportionment to establish, with the concurrence of the board of aldermen, "the following new grades of salaries * * *: Examiner of Dependent Children, $1,200 per annum; Examiner of Charitable Institutions, $1,200 per annum." At the time of this request the former title had not been changed to the latter to make all examiners of one kind. Acting upon the commissioner's request the board of estimate and apportionment on December 18, 1903, adopted a resolution recommending "to the Board of Aldermen, in accordance with the provisions of section 56 of the Greater New York Charter, that the salaries of the following positions in the Department of Public Charities * * *

* See Revised Greater N. Y. Charter (Laws of 1901, chap. 466), § 56, as amd. by Laws of 1902, chap. 435; Id. § 10, as amd. by Laws of 1902, chap. 436.— [REP.

be fixed as follows: Examiner of Dependent Children, $1,200 per annum; Examiner of Charitable Institutions, $1,200 per annum." Thereafter, on December 22, 1903, the board of aldermen adopted a resolution concurring in that of the board of estimate and apportionment and fixing "the salaries of the positions of Examiner of Dependent Children and Examiner of Charitable Institutions in the Department of Public Charities, at the rate of $1,200 per annum, each." On December 29, 1903, the resolution became and had the effect of law by the approval and signature of the then mayor. The relator claims that he became entitled to the increased salary from January 1, 1904. On that date the defendant was appointed. He has certified the relator's salary to the comptroller at the annual rate of $1,000, and, though duly requested, he refused to certify it at the higher rate.

I am of the opinion that the refusal was not justified. Under the Consolidation Act* and the charter,† as it existed prior to the comprehensive amendments in 1901, the power to fix salaries of subordinates rested in the heads of departments. The charter, in its original form, gave power to the board of aldermen, or rather to the municipal assembly, as it was then called, upon the recommendation of the board of estimate and apportionment, to fix the salary of those whose compensation was paid out of the city treasury, without making it mandatory upon it to do so or interfering with the authority in this regard of the heads of the departments (§ 56‡). The charter revision commission, in its report dated December 1, 1900, seeking a remedy to curtail the expenditures of the city since consolidation that had grown out of all proportion to the expenditures of the various constituent parts prior to consolidation, recommended that the determination of the amount of salaries to be paid ought not to be vested in the appointed heads of departments, but should be lodged absolutely in the officials chosen by the voters of the city itself. The incidental power of the city legislature was, therefore, made mandatory and exclusive. "We propose," say the commissioners, "to take away absolutely from every head of department the power to fix the salaries of his own subordinates." (Report of the Charter Revision Com-

---

*See Laws of 1882, chap. 410, § 48.— [REP.
† See Laws of 1897, chap. 378, § 1543.— [REP.
‡ Laws of 1897, chap. 378, § 56.— [REP.

mission, p. 49.) Section 56 of the charter was consequently amended* to read, so far as here material: "It shall be the duty of the board of aldermen, upon the recommendation of the board of estimate and apportionment, to fix the salary of every officer or person whose compensation is paid out of the city treasury other than day laborers, and teachers, examiners and members of the supervising staff of the department of education, irrespective of the amount fixed by this act, except that no change shall be made in the salary of an elected officer or head of a department during his tenure of office." This particular section was again amended in 1902 (Chap. 435) by a provision to the effect that all salaries as fixed on January first of that year should continue in force until fixed by the board of aldermen, except as might be otherwise determined by the board of estimate and apportionment prior to May 1, 1902, under section 10 of the charter. This exception was incorporated so as to harmonize the powers granted in section 56 with the power granted to the board of estimate and apportionment for a limited time by a simultaneous amendment of section 10. (Laws of 1902, chap. 436.) That amendment gave the board of estimate and apportionment the power, between January 1 and May 1, 1902, upon the recommendation of the mayor or other designated officers, to fix all salaries. The purpose of this last amendment was to permit the rearrangement and reclassification of salaries within a specified time. Thereafter the power was to vest again exclusively in the board of aldermen, as theretofore, acting upon the recommendation of the board of estimate and apportionment.

It will be noted from the statement of fact that the salary of the relator, or of those holding a similar position, originally fixed by the head of the department at $1,000 yearly, was not diminished, but continued by the board of estimate and apportionment under its temporary powers, as evidenced by the resolution of April 28, 1902. When, therefore, the power of that board to fix salaries expired on May 1, 1902, the only power that could increase or diminish salaries was the board of aldermen. The proceedings were, therefore, regular and strictly in accordance with statute, when in September, 1903, the then commissioner of public charities applied

* See Laws of 1901, chap. 466, § 56.— [REP.

to the board of estimate and apportionment for a recommendation to increase the salaries of the examiners in his department, when that board recommended the increase in due form and when the board of aldermen acted upon the recommendation and fixed the salaries. The resolution, which was duly approved by the mayor, specifically "fixes the salaries of the positions of Examiner of Dependent Children and Examiner of Charitable Institutions * * * at the rate of $1,200, per annum, each." The fact that at the date of the resolution the position of the examiner of dependent children had been transferred within the same competitive class to the position of examiner of charitable institutions is immaterial. The effect of the resolution was to fix the salaries of the latter class of examiners — the sole kind at that time in the department — at the annual sum of $1,200. After the board had acted there was but one salary for the position. Although it in terms fixed the salary of the " positions," while the charter calls upon it to fix the salary of " every officer or person," the inference is fair, especially when considering the intention to deprive the head of the department of control over salaries, that the salary of the position once fixed, every person or officer in that position is *ipso facto* entitled to that salary. The head of a department cannot fix a salary. Section 1543 of the charter,* defining the duties of the heads of departments and their control over subordinates, grants them large powers, gives them the right to determine the number and the duties of all officers, clerks, employees, laborers and subordinates, subject to the limitations therein prescribed, but it again reiterates the removal from their control of all questions as to compensation by providing that the " salaries or wages * * * shall be such as shall be fixed by the board of aldermen, upon the recommendation of the board of estimate and apportionment, in the manner provided in this act." My conclusion, therefore, is that with the exclusive power to fix salaries vesting in the board of aldermen, with the heads of departments shorn of all control over salaries, the legal incumbent of a position is entitled to the salary fixed by the board of aldermen without any further step being necessary on the part of the head of the department.

It remains to consider the question in the light of the Civil Serv-

---

* Laws of 1901, chap. 466, § 1543.— [REP.

ice Law. If the increase of salary amounts to a promotion, then there must be a compliance with that law, by taking a further competitive examination before the erstwhile incumbent becomes legally entitled to the increase. While the civil service rules merely establish a classification and do not fix or control salaries (*People ex rel. Lodholz* v. *Knox*, 58 App. Div. 541; *Powell* v. *City of New York*, 65 id. 421), every question of an increase of salary must be considered with regard to section 15 of the Civil Service Law (Laws of 1899, chap. 370), which requires that promotions shall be based on merit and competition and that for the purposes of the section "an increase in the salary or other compensation of any person holding an office or position within the scope of the rules in force hereunder beyond the limit fixed for the grade in which such office or position is classified shall be deemed a promotion." If the relator's office or position was classified for a grade, the compensation of which was limited to $1,000, then the increase would amount to a promotion under section 15 of the Civil Service Law and would not take effect unless he passed a competitive examination and otherwise complied with the legal requirements. An examination of "the scope of the rules in force hereunder" will show that the increase did not amount to a promotion. Under the rules and classification of the municipal civil service commission the relator's position is in the competitive class; that is to say, the original appointment depends upon a successful competitive examination. For the purpose of regulating "promotion where practicable the competitive class shall be subdivided as follows: Part 1. All positions of whatever function, description or compensation not included in any of the subdivisions following — to be known as the 'ungraded service'; * * *. The positions in the foregoing parts, except Part 1, shall, for purposes of promotion, be arranged in grades, which, so far as they shall have been established, shall be the grades fixed by law or ordinance, and which shall be as designated in the classification." (Rule 6.) Turning to the classification we shall find under part 1 — ungraded positions in group 11, positions of a special or miscellaneous character, that of "Examiner of Charitable Institutions" — the position occupied by the relator. In other words, there are no "grades" in the ungraded positions under part 1, and there cannot, therefore, be an increase

in the salary "beyond the limit fixed for the grade in which such office or position is classified." A mere increase in salary does not *ipso facto* constitute a promotion; it must be beyond the limit fixed for the grade. There are no grades in part 1, and consequently an increase in salary of a position classified in it, otherwise legally encompassed, becomes effectual, as the Civil Service Law commands no further preliminary requirements. Rule 15 of the local rules specifically exempts positions in part 1 from promotion tests. The ungraded service stands practically by itself so far as promotion is concerned, and my conclusion, therefore, is that section 15 of the Civil Service Law has no applicability to the case at bar. It follows that the sole power to grant the increase having legally fixed the salary of the relator's position, he became entitled to the salary from that day forth and that it was incumbent on the defendant so to certify to the comptroller. The writ should be allowed.

---

NOTE.— The rest of the cases of this term will be found in the next volume, 109 App. Div.— [REP.