In the Matter of the Application of GLADYS M. BEGGS and Others, Petitioners, against PAUL J. KERN and Others, Constituting the Municipal Civil Service Commission of the City of New York, and Others, Respondents.

Supreme Court, Special Term, New York County, November 8, 1939.

*Albert De Roode*, for the petitioners.

*William C. Chanler, Corporation Counsel [Charles E. Hirsimaki* of counsel], for the respondents.

McGoldrick, J. This petition is by thirty-seven persons employed under the civil service title of " Social Investigator " in the board of child welfare. They entered the city service under that title through competitive examination, and they are receiving various salaries, ranging from $1,800 per annum up to $2,640 per annum. They have been in the service of the city from various dates, the earliest date of entrance being May 1, 1917, and the latest December 8, 1936. They seek to compel the municipal civil service commission to transfer their positions from the ungraded service known as Part I of the civil service classification to appropriate grades in the social service classification.

Before considering the rights of the petitioners to the main relief asked, namely, the grading of their position, it will be useful to take an historic review of the status of the social service with particular reference to the employees of the board of child welfare. The social service of the city is concentrated chiefly in four departments, department of welfare, the board of child welfare, the department of hospitals and the department of corrections. While the service has existed for many years its great expansion came after the beginning of the depression, with the institution of home relief and the activities of the department of welfare. The first moderate increase in the number of social workers prior to that occurred after the establishment of the board of child welfare, pursuant to chapter 228 of the Laws of 1915. That board was charged with the administration of the so-called Widows' Pension Law, by the terms of which allowances were granted to widowed mothers in order that their children might be suitably cared for in their homes by such mothers. With the growth of the emergency relief service the number of persons employed by the city in the social worker category was approximately 6,000; the greater part of these being employed in

the emergency relief administration outside of civil service. But in 1936 a law was enacted providing for their classification under the civil service rule. When the number of employees in the social service was small its workers were in the ungraded class; when the great increase in the service occurred the task of grading and classification loomed as a problem.

After an abortive attempt at reclassification of the social service in all the city departments, a new attempt limited to the employees of the emergency relief bureau, hereinafter referred to as E. R. B., or its successor, was made on June 24, 1937, in a resolution adopted by the municipal civil service commission, and duly approved by the mayor and the State Civil Service Commission. That resolution placed the position of social investigator in Grade 1, with a salary range up to but not including $1,800 per annum; and established five other grades, Grade 2 being assistant supervisor, $1,800 to not including $2,400 per annum; Grade 3, supervisor, $2,400 to not including $3,000 per annum; Grades 4, 5 and 6 need not concern us at present. Obviously this classification did not apply to the present petitioners because their positions are not included in the E. R. B. or its successor. On January 12, 1938, the classification just mentioned was extended to the board of child welfare. The grades were identical with those in the other service, but the extension was coupled with certain conditions. They read as follows:

" 1. All persons of the title of Social Investigator and Special Investigator in the Board of Child Welfare lawfully performing the duties pertaining to such titles and receiving the salaries lawfully attaching thereto are hereby continued in such titles, duties and salaries regardless of the classification hereinafter set forth.

" 2. All supervisory positions in the Board of Child Welfare shall be filled by promotion examinations to be hereafter ordered and in accordance with the titles and grade ranges hereinbefore set forth.

" 3. No person shall perform supervisory duties in the Board of Child Welfare unless such person shall have passed the appropriate competitive examinations and been certified therefrom."

The effect of the condition contained in the first paragraph is interesting; in fact, its interpretation is the key to the main question in dispute. On its face it accomplishes this result: It continues persons occupying the position of social investigator at the salaries then drawn by them notwithstanding the fact that they are higher than the reclassified salary for that position of less than $1,800 per annum. Before commenting on this interpretation at length, or considering the further history of the reclassification process, it is

well to pause for light thrown upon its interpretation by events preceding, notably by the decision in *Matter of Amann* v. *Finegan* (253 App. Div. 364).

It appears from respondent's answer in the instant case that in 1936 the municipal civil service commission endeavored to arrive at the reclassification of grading of the employees in all the social welfare departments on some uniform basis. The attempt failed, allegedly by reason of the attitude of the employees themselves who feared that a reduction in their salary would result. It is obvious that the more recent employees in the E. R. B. were receiving on the average lower salaries than those in other departments, such as the board of child welfare. After the adoption of a special classification applicable to the E. R. B. alone, the board of child welfare with the co-operation of the board of estimate endeavored to adopt some form of grading, together with opportunities for promotion. It adopted parenthetical or office titles in connection with its social investigators who were, of course, all in the ungraded class. These parenthetical titles, following the designation " Social Investigator," were " Senior Supervisor," " Supervisor," and " Assistant Supervisor." They are identical with Grades 2, 3 and 4 of the classification adopted for the E. R. B. in June, 1937. The board of child welfare allocated these positions with parenthetical titles to some employees with increased salaries, but the civil service commission declined to certify the payrolls on the ground that the increases constituted promotions in violation of the Civil Service Law and Rules.

In October, 1937, all allowances over $360 per year were rescinded and the commission agreed to certify the payrolls where the increases did not exceed such sum. There were, however, seven persons who had received the increased compensation, and they made demand to be paid at the higher rate from the time of the granting of their increase to the time that increase was received. The court below sustained the position of the civil service commission, but the Appellate Division, in February 1938 (*Matter of Amann* v. *Finegan*, 253 App. Div. 364), reversed and decided that from the time of the increases to October 18, 1937, when the higher increases were rescinded, the board of child welfare was entirely in its right in granting those increases, and such action did not constitute promotions which could only be made after competitive examinations. The ground of the decision was that the position of the social investigator in the board of child welfare was in the ungraded class. As to an ungraded position it was said that an increase of salary does not effect a promotion. (Citing *People ex rel. Stokes* v. *Tully*,

108 App. Div. 345.) While there could be such a thing as promotion examinations in the ungraded service, the court held that classification for the establishment of grades was a preliminary step. After such classification, however, when the positions would cease to be in the ungraded service, an advance from one salary grade to another would require appointment from a promotion list.

The effect of the *Amann* decision was to affirm that increases in salary in the ungraded class could be made within the appropriations without approval of the civil service commission, such increases not constituting promotions. There are other implications in that opinion which will be considered presently.

The resolution of January 12, 1938, of the municipal civil service commission was adopted prior to the *Amann* reversal and while the authorities were still under the impression that increases in salary to unofficially classified higher positions constituted promotions. It is understandable, therefore, why the resolution of January 12, 1938, adopted gradings in the social service. In order, however, to protect persons who had the title of social investigator and who were receiving as in the case at bar salaries much in excess of $1,800, the condition as to continuing such persons in their titles and salaries was adopted as a condition for the classification. It is of note to observe, however, that the statement that persons of the title of social investigator were to continue in such titles, duties and salaries regardless of the classification, was not any favor or any protection for the benefit of such persons. In one respect it was only a declaration of law as it existed. As interpreted by the commission, it may be remarked, parenthetically, as pointed out later, it had certain implications not so favorable to the petitioners.

The statement in the *Amann* case that rights legally created cannot be affected by any intended action of the commission — meaning there the intended reclassification — was only a reiteration of what was contained in the decisions in *Matter of Fornara* v. *Schroeder* (261 N. Y. 363); *Matter of Sandford* v. *Finegan* (276 id. 70); *Matter of Kinsella* v. *Kern* (254 App. Div. 834, affg. 168 Misc. 847). These cases hold to the principle that reclassification of positions by the civil service commission could not validly effect the removal of the then incumbents. The reason is that, having been validly appointed at the compensation they were receiving, they could not legally be removed by any subsequent action of the municipal civil service commission in reclassifying their positions. These cases, it is true, deal with a reclassification of an exempt or non-competitive position to a competitive class. They stand for the proposition that the exempt or non-competitive

incumbent has the same privilege as a result of the transfer of the position to the competitive class as if he had originally been appointed from a competitive class.

There is no case which definitely deals with the proposition as to whether grading may be established applicable only to future incumbents, leaving in the ungraded class present holders of the title. The cases of *Matter of Amann* v. *Finegan* (*supra*) and *Matter of Cook* v. *Kern* (278 N. Y. 195) incidentally touch upon closely related questions. The decisions in the *Fornara, Sandford* and *Kinsella* cases, reaffirming the rule that the transfer of a noncompetitive or exempt position to the competitive class gives the then holders the same privileges as if they had been originally appointed from the competitive class, lead to possible analogy that the same rule should be applied when an ungraded position is classified into grades.

The broad question thus raised may more properly be taken up after a consideration of certain resolutions subsequent to the one of January 12, 1938, which graded social investigator as in the board of child welfare in Grade 1 and imposed certain conditions in connection therewith. This resolution was followed by one of February 10, 1938, which applied grading in the E. R. B. and the child welfare service to the department of hospitals. The resolution of that date contained a proviso as to social investigator in the department of hospitals identical with the one in the board of child welfare resolution of January 12, 1938. Thereafter, on September 21, 1938, a new resolution was adopted extending the social service classification theretofore applied to the E. R. B., child welfare and hospitals, to all city departments, under certain terms and conditions contained in paragraph 4 thereof. Subdivision a of that paragraph is the one upon which petitioners rely. It reads: " All persons of the title of Social Investigator, who are affected by this resolution, shall continue in such title with salaries, present duties and status unaffected and unimpaired by this reclassification. Promotion lists presently in existence will continue to be certified for appropriate positions in the new classification." That resolution specifically strikes from the ungraded service certain positions including that of social investigator, and it adopts Grades 1 to 6 for the social service in all city departments, with titles identical with those in the resolutions previously mentioned and with the same salary ranges.

What was the effect of the new resolution? Respondents contend that it only completed the grading in the social service theretofore commenced by adding the remaining departments which did social service work whose employees had not yet been graded.

These were the department of welfare and the department of correction. A reading of the resolution of September 21, 1938, however, shows that the intent of that resolution was much broader. The resolution, for the first time, adopted a grading for the social service in all city departments and eliminated the position of social investigator, among others, from the ungraded service. No previous resolution had done this. Therefore, condition 4-a can have a sensible meaning only in the light of the fact that the striking of social investigator from the ungraded service and putting it in Grade 1 with a maximum of $1,800 per annum was not to affect present incumbents in the position of social investigator, most of whom were drawing salaries considerably in excess. There may be some indication in some of the subdivisions that the intent of the resolution was to limit its application to the departments of welfare and of correction. But a reading of the resolution in its entirety shows that petitioners are properly basing their alleged grievance upon the resolution of September 21, 1938, and not upon the earlier one of January 12, 1938. The later resolution leaves no doubt that its intent was to establish a uniform classification in all city departments, to put social investigator in Grade 1, to require promotion examinations for the higher salary grades but to retain the then incumbents in the position of social investigator in their salaries and in the performance of duties of what might seem to be a higher grade, such as assistant supervisor or supervisor.

If the intent of the resolution was merely to protect present incumbents in the enjoyment of their present salaries there can be no quarrel with it. In fact, as indicated before, such a provision would be superfluous. The incumbents, having been originally lawfully appointed to their present salary positions, could ordinarily not be deprived of it as a matter of law. The difficulty arises, however, in its interpretation by respondents who have denied grading to present incumbents and have practically frozen them in the ungraded class. While in such class their salaries, to be sure, may be increased, they might also be reduced. The whole protection they enjoy by reason of their original valid appointment is whittled away by retaining them in the ungraded class, the range of salary in which is more or less outside of civil service protection.

The correct appraisal of the action of the commission in grading the social service is urgent. If left in the air it will be the source of unrest, dissatisfaction and the seed for much future litigation. The commission has presumed to interpret its regrading action as establishing a graded class for new employees and an ungraded

class for present incumbents. In thus leaving them in the enjoyment of their present salaries it professes to have conferred a benefit by preventing a reduction. Such benefit is only illusory. What is intended as a shield can easily become a sword. In subsequent budgets the ungraded social investigators may have their salaries manipulated down to a level below $1,800. In certain respects the action of the commission is clearly illegal. In providing in its resolution of January 12, 1938, that no person shall perform supervisory duties who has not passed an appropriate competitive examination it clearly violates the rule in *Cook* v. *Kern* (*supra*). Many of the social investigators, while in the ungraded class, were assigned supervisory duties and awarded higher salaries. Having been legally assigned to the supervisory position they cannot here be removed therefrom. Just as the stationary engineers in charge appointed prior to the creation of that grade in the *Cook* case were legally fixed in their position, notwithstanding the promotion examination thereafter ordered for that grade, so those social supervisors, doing supervisory duty to which they were assigned while the position was in the ungraded class, could not be removed from those positions by persons on promotion lists.

But there are much broader implications resulting from the line of decisions beginning with the *Fornara* case and ending with the *Cook* case. As has been said before, the effect of those decisions is that if a certain position has been put into the competitive class the effect is to transfer all incumbents to that class without the necessity of an examination. Under such a rule it would be illegal for the commission upon placing a position in the competitive class to impose a condition that such action should only affect the future and that the present incumbent should remain in the exempt class.

In *Matter of Rooney* v. *Rice* (274 N. Y. 347) the civil service commission classified the position of executive officer in the competitive class, with exemption as to the first incumbent to be selected. The court held that this was beyond the power of the commission. While the analogy is not complete it may be safe to infer, in the light of the *Fornara* and the other cases cited, that, if the first incumbent had actually been appointed as an exempt employee and the position had thereafter been put in the competitive class, a resolution keeping him from the benefits and immunities of the competitive class would have been illegal. If the placing of a position in that class gives that legal status to present exempt employees holding such position, why should not grading of a position give the benefits of the new classification to those in the present service?

It is both incongruous and illegal for a position to be in the graded class and yet deemed ungraded as to existing employees. The rules of the New York city civil service commission, which have the effect of law, state that whenever it is practicable to grade the commission shall establish such grades as it may deem appropriate. Subdivision 1 (a) of section 1 of rule V provides that the compensation of a position shall determine the grade of such position. And subdivision 13 of rule I defines " grade " as " the order or standing of a position with reference to the compensation attaching to it." Not only do the Civil Service Rules require the grading of positions where practicable, but Local Law 55 (N. Y. City) of the Local Laws of 1937 (Administrative Code, § B40–6.0) is virtually a mandate for the establishment of grades in the competitive class whenever practicable.

Respondents concede that in the graded service compensation determines grade; from which it would follow that a social investigator drawing a salary from $1,800 to $2,300 would perforce be in Grade 2. They do, however, insist that the specific resolutions dealing with social investigators presently in the service retain them in the ungraded class, notwithstanding the reclassification. This resolution being specifically applicable to persons of the rank of petitioners, they contend, supersedes the general rule as to the relation between grade and compensation. From this assumption, if the respondents are correct, it would follow that in the ungraded service compensation does not determine grade, and that, therefore, an employee's salary may be reduced or increased without violation of civil service requirements. (*Matter of Murray*, 88 Misc. 625; *People ex rel. Stokes* v. *Tully*, 47 id. 275; affd. on opinion below, 108 App. Div. 345; *Thoma* v. *City of New York*, 263 N. Y. 402.)

There is another argument in favor of keeping the present social investigators in the ungraded class, submitted by respondents in their answer. They suggest that if all the employees who were social investigators had been reclassified under the basis of salary alone, those receiving in excess of $1,800 per annum would automatically fall into supervisory grades. There would thus be one supervisor for every investigator. The argument is rather specious. The evolution of the grading in the social service, as may well be studied in the *Amann* decision, is from social investigator ungraded class. Long service and experience resulting in increase in the ability of employees in the child welfare led to gradual increases in their salary, without any promotion examinations, absent in the ungraded class. The classification into grades was not primarily but only incidentally one of change of title into supervisory grades.

Primarily it involved the creation of classes from Grade 1 to Grade 6. So far as the moving employees have attained salaries which fit into Grades 2 and 3 they are entitled to be so classified, even if thereby they attain an honorary title of " Assistant Supervisor " or " Supervisor," as the case may be. Their advance into salary Grade 4, 5 or 6 must be governed by their standing on eligible lists created after competitive examinations. At present they should have the respective positions of Grade 2 and Grade 3 in the social service. The law, as here interpreted, will not permit them to be displaced by persons on promotion lists for such grades, because their rights thereto vested when the reclassification was made.

As to the other relief requested, which would interfere with the right of the city to conduct promotion examinations for assistant supervisor, Grade 2, and compel the conduct of separate promotion examinations for assistant supervisor in the board of child welfare, application therefor is denied without prejudice. Such application is perhaps premature, perhaps it is not here adaptable, and perhaps it seeks interference with discretion in administrative policy.

The incidental objection raised by respondents that petitioners are barred from relief by the four months' statute of limitations (Civ. Prac. Act, § 1286) is without merit. If respondents are right in their contention, the failure of the civil service commission to perform a duty, allegedly acquiesced in by petitioners in failing to make a timely motion, would perpetuate an illegal act. Such limitation proviso cannot rationally be so construed.

To strike out the position of " Social Investigator " from the " Ungraded Service," place it in the " Graded Service," but seek to retain the then incumbents in the " Ungraded Service," offends both statute and principle and, it seems to me, violates common sense. The motion is granted to the extent of requiring the municipal civil service commission to place petitioners, as herein indicated, in Grades 2 and 3 of the social service classification. Settle order.