In the Matter of the Application of JAMES CUSACK, Respondent, for a Peremptory Writ of Mandamus against THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant.

NEW YORK (CITY OF) — BOROUGH OF BROOKLYN — ABOLITION OF POSITIONS OF PRINCIPALS OF EVENING HIGH SCHOOLS AS "UNNECESSARY" BY CHANGE OF SYSTEM OF CONDUCTING THEM. The board of education of the city of New York is authorized by section 1069 of the charter (L. 1901, ch. 466) not only to establish evening schools, but also, in its discretion, to change the system of conducting them, and if the result of the change involves the abolition of the former position of a principal, although no charges have been preferred against him under section 1093, he is not entitled under section 1101 to a mandamus reinstating him, since under that section his right to retain his position is subject to the right of the board to abolish an "unnecessary position," and, where a change renders his services unnecessary, it may properly dispense with them.

*Matter of Cusack* v. *Bd. of Education,* 78 App. Div. 470, reversed.

(Argued February 10, 1903; decided March 17, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 9, 1903, which reversed an order of Special Term denying a motion for a peremptory writ of mandamus to compel the defendant to reinstate the petitioner in the position of principal of an evening high school in the borough of Brooklyn and granted such writ.

The facts, so far as material, are stated in the opinion.

*George L. Rives, Corporation Counsel (James McKeen* of counsel), for appellant.   The position of male principal in this evening school was abolished as an inevitable incident of the determination by the board of education that the sexes should be separated and that the women pupils should be in charge of women instead of men.   This determination, as a matter of policy, was clearly and plainly within the discretionary power of the board of education.   (L. 1901, ch. 466, §§ 1068, 1069, 1101.)

*Conrad Saxe Keyes* for respondent.   The claim made that the position of the relator was abolished and a new position in good faith created is untenable.   (*People ex rel. v. Scannell,* 48 App. Div. 69.)

WERNER, J.   The relator seeks to be reinstated to the position of principal of an evening high school, from which he was removed by the board of education of the city of New York under the circumstances hereinafter set forth.   The relator is, and for many years has been, principal of Day School No. 17 in the borough of Brooklyn.   In 1887 he was appointed by the board of education of the then city of Brooklyn to the position of principal of Evening High School No. 22, which he held until September 23d, 1901, when he was transferred to Evening High School No. 3 to serve in the same capacity.   The latter position he continued to fill until the close of the school year of 1901–02, at which time he failed of reappointment.   Prior to July, 1902, there had been four evening high schools in the borough of Brooklyn, all of which were devoted to the education of persons of both sexes. The board of education determined to segregate the sexes; to set apart two of the evening high schools for the use of males and two others for females; and to appoint male principals for the male schools and female principals for the female schools.   In the latter part of June, 1902, in pursuance of this newly adopted policy, the board of education appointed two female principals and two male principals for the evening

high schools.   The relator and one other male principal were not reappointed, and this proceeding was brought to compel relator's reinstatement.   At Special Term the learned presiding justice denied the application for an alternative writ of mandamus.   Upon appeal to the Appellate Division the order entered upon that decision was reversed, and an order made directing the issuance of a peremptory writ of mandamus to compel relator's reinstatement to the position from which he had been removed.   From the last-mentioned order the board of education appeals to this court.

The relator stands upon the provisions of sections 1101 and 1093 of the charter of the city of New York.   Section 1101, so far as material to this proceeding, provides that " Except as herein otherwise provided   *   *   *   all principals, teachers and other members of the educational staff in the public school system of any part of the City of New York   *   *   * shall continue to hold their respective positions and to be entitled to such compensation as is now provided or may hereafter be provided by the lawful authority subject to change of title, to reassignment or to removal for cause, as may be provided by law, and subject to the right of the said board to abolish unnecessary positions."   Section 1093 provides, in substance, that certain officers connected with the educational department may prefer charges against principals, teachers and certain other officers connected therewith " for gross misconduct, insubordination and general inefficiency."

The relator's contention is that section 1101 secures his tenure of office to the position from which he claims to have been illegally removed, subject only to trial and conviction upon one or more of the charges that may be preferred under section 1093.   As these sections are to be interpreted in the light of other questions which arise in other cases now pending before us, we shall confine the present discussion to a single point that seems to us to be decisive of this proceeding. The very section of the charter upon which the relator depends for his tenure to the position from which he was removed, and to which he seeks to be reinstated, confers upon

the board of education the right to " abolish unnecessary positions." In June, 1902, the board of education decided upon a change in the system of conducting the evening high schools. As a part of this change it was determined to appoint two female principals for the two female evening high schools then to be established. As there were only four evening high schools, the appointment of female principals for two of them, of course, rendered it impossible to appoint four male principals. Two of them were, therefore, removed. One of these was the relator. He contends that he was just as competent as either of the female appointees to preside over female schools, and, in support of this assertion, he cites the fact that he is principal of a day school devoted to the education of both sexes. He further argues that a position cannot be said to have been abolished when it is filled by the appointment of another person thereto. The answer to this argument can be briefly stated. If the position previously held by the relator was in fact abolished because it was unnecessary, it matters not how competent he may have been to fill it. Section 1101 expressly declares that all positions enumerated therein are " subject to the right of said board to abolish unnecessary positions." Was the position, from which the relator was removed, abolished? In answering this question we must remember that all of the sections of the charter relating to the school system must be read in *pari materia.* Section 1069 authorizes the establishment of evening schools. Except as limited by the express provision of the charter, this power involved the exercise of judgment and discretion in the establishment, management and conduct of these schools. The board of education, in the exercise of this power, judgment and discretion, decided that the efficiency of the evening high schools would be increased by the segregation of the sexes, both as to principals and teachers. Nothing contained in the charter forbids this. It was clearly, therefore, one of the rights which the board derived by implication from the express grant of power to establish and conduct evening schools. In the absence of proof to the contrary, we must assume that

this right was exercised in good faith and for the best interests of the schools. It follows that the services of two male principals of evening high schools were necessarily and properly dispensed with. Under the change of system which was inaugurated, places previously held by them became "unnecessary positions" which the board of education proceeded to abolish, not by formal resolution, but by refusal to make appointments thereto. Until these positions are restored there can be no warrant in the charter for the reinstatement of those who were removed therefrom. The relator's application was, therefore, properly denied in the first instance and should have been denied by the Appellate Division.

The order of the Appellate Division must be reversed and that of the Special Term affirmed, with costs to the appellant.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, MARTIN and VANN, JJ., concur.

Order reversed, etc.