(115 App. Div. 366)

BUCKBEE v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

SCHOOLS AND SCHOOL DISTRICTS—SCHOOL TEACHERS—SALARIES—POWER TO CHANGE.

Laws 1899, p. 883, c. 417, amending Greater New York Charter, Laws 1897, p. 394, c. 378, § 1091, authorizes each school board to adopt by-laws fixing the salaries of principals, etc., which should be regulated according to merit, length of service, etc. That the salaries payable in the different schools of the territory consolidated on January 1, 1898, should remain until changed or modified under the section, and that salaries of women principals should be increased each year until they received $2,500 per annum. That no woman principal of 10 years' service as principal should receive less than $2,500 per annum, and that no salary then paid to any public school teacher in the city should be reduced by operation of the act. *Held*, that where a female principal who had taught for 10 years was awarded a salary of $2,750 a year under said section, her vested contract right to teach in the position of principal did not preclude the board of education from thereafter adopting a by-law the effect of which was to reduce her salary to $2,500 per year, the minimum prescribed by such section.

Appeal from Special Term, New York County.

Action by Sarah E. Buckbee against the board of education of the city of New York. From an interlocutory judgment sustaining plaintiff's demurrer to defendant's answer (100 N. Y. Supp. 1063), it appeals. Reversed, and demurrer overruled, with leave to withdraw.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Theodore Connoly and John J. Delany, Corp. Counsel (Stephen O'Brien, on the brief), for appellant.

John T. Little (Theodore H. Lord, on the brief), for respondent.

CLARKE, J. The plaintiff was a woman principal in the public schools. Her complaint contains 38 causes of action, the first of which is for a balance of salary claimed to be due and unpaid to her; and the other 37 are upon similar claims of other teachers assigned to her.

Chapter 417, p. 883, of the Laws of 1899, passed April 25, 1899, amended section 1091 of the Greater New York Charter (chapter 378, p. 394, of the Laws of 1897), so as to read as follows:

"Section 1091. Each school board shall have power to adopt by-laws fixing the salaries of borough and associate superintendents, of principals, and branch principals, and of all other members of the supervising and teaching staff, and such salaries shall be regulated by merit, by the grade of class taught, by the length of service, or by the experience in teaching of the incumbent in charge, or by such a combination of these considerations as the school board may deem proper. Said salaries need not be uniform throughout all the several boroughs, nor in any two of them, nor throughout any one borough. The salaries fixed and established and duly payable in the different schools of the territory hereby consolidated as these salaries were on the 1st day of January, 1898, shall be and remain the salaries in the schools of the several boroughs, hereby constituted, until the same shall be changed or modified as provided for in this section. * * * The salaries of women principals in said schools shall be increased by the addition of $250 in each year until they shall receive the sum of $2,500 per annum; * *. * and no woman principal of ten years' service as principal in said schools shall receive less than $2,500 per annum, provided, however, that the service of such principal shall have been approved after inspection and investigation as fit and meritorious by the borough board of superintendents; * * * no salary now paid to any public school teachers in the city of New York shall be reduced by the operation of this act."

On the 17th day of May, 1899, the school board for the boroughs of Manhattan and the Bronx adopted a schedule under which women principals were to receive for the first year, $1,500; for the fifth, sixth, seventh, and eighth years, $2,500, and for the ninth and following years, $2,750; said schedule to take effect on and after June 1, 1899. The plaintiff at the time of the passage of that resolution, was a woman principal, who had served for 10 years, and who met the requirements of the statute as to fitness and merit, and by virtue of the schedule adopted, her salary was fixed at $2,750 per annum. On the 20th day of December, 1899, the school board passed the following resolutions:

"Resolved, that the salary schedule adopted by the board on May 17th last, be, and the same hereby is, repealed, to take effect December 31st, 1899. * * * Resolved, that all principals and teachers affected by chapter 417, p. 883, of the Laws of 1899 be paid on and after January 1st, 1900, the minimum mandatory salaries of that chapter."

As a consequence, the plaintiff's salary was reduced from $2,750 to $2,500; she being one of the persons affected by said chapter, and $2,500 being the minimum required to be paid to her. She now brings suit to recover from the board of education the difference between the two salaries for the period covered by the suit. The answer of the defendant admits all of the allegations of the complaint, and sets up as a defense the passage of the resolutions of December 20th, quoted supra. To this defense, the defendant demurs upon the ground that the facts stated are sufficient in law to constitute a defense and

the demurrer having been sustained at the Special Term, the defendant appeals.

The plaintiff claims that her right to compensation at the rate of $2,750 a year became vested upon the acceptance of the offer held out by the board of education, as contained in the resolution of May 17, 1899, by her retention in the service and the receipt of compensation as therein provided from June 1, 1899, to December 31, 1899, and that the right of compensation so fixed is a vested contract right and cannot be impaired. The defendant claims that the power to fix salaries given to the school board by the charter was a continuous one, and that, except in so far as the statute provided for a minimum salary, the board had the same right to reduce as it had to increase. Prior to the creating of the Greater New York, the Court of Appeals, in Steinson v. Board of Education, 165 N. Y. 431, 59 N. E. 300, cited with approval in Graham v. City, 167 N. Y. 85, 60 N. E. 331; Gunnison v. Board of Education, 176 N. Y. 11, 68 N. E. 106, settled the status of a school teacher in his relation to the board of education. In that case the plaintiff brought an action to recover salary for six years as a teacher, during which years he had performed no services whatever, having been prevented from teaching by the school authorities though never having been lawfully removed. The court said:

"The plaintiff was not an officer but an employee. His employment was contractual and his proper remedy is by action. * * * The plaintiff's employment was subject to no other limit of time than the power of removal for cause vested in the defendant and its officers, and the power of the state superintendent to revoke his state license. The plaintiff was discharged without right or cause and is entitled to recover."

In People ex rel. Callahan, 174 N. Y. 169, 66 N. E. 674, the relator, who was a teacher of the fourth grammar grade, was reassigned to the sixth grammar grade by reason whereof her salary was reduced by $156 a year. She obtained a peremptory writ of mandamus from the Supreme Court directing her reinstatement as a teacher in the fourth grammar grade. In considering whether the school board's action was legal or not, the court said:

"Section 1117 as continued by section 1101 of the revision (Laws 1901, p. 479, c. 466) was designed to establish the general rule applicable to all teachers regardless of when they were appointed, that a public school teacher in the Greater City should be protected against removal during good behavior and competency. * * * If * * * after passing through the probationary period, a permanent license is issued, the statute attaches to an appointment permanency of tenure. * * * The statute makes good conduct and good work the basis of tenure as to all teachers holding a permanent license. * * * We think * * * that the purpose of section 1117 was to get the best work from all teachers by assuring them of safety or protection without resorting to outside influences so long as they maintain a high standard of conduct and efficiency, and authorizing their removal if they fall below it. This construction is in harmony with the theory of appointment under the rules of civil service and of promotion for merit, provided by other sections of the statute (sections 1075, 1081, 1106, and 1110.)"

And the court concluded:

"The relator had a permanent license to teach in any grammar grade. She was appointed to the sixth grade, and after teaching there for over two

years she was duly promoted to the fourth, to which a higher salary was attached. She accepted the position and was entitled to hold it permanently, unless she was removed for cause, after an opportunity to be heard. She was removed without cause or hearing and reassigned to the sixth grade at her old salary. The defendant, in good faith and through a misconception of the statute, thus exercised a power which it did not possess, and the action of the courts below in restoring the relator to the fourth grade was proper and should be sustained."

Upon the decisions in those two cases, the plaintiff contends that her relation to the board of education was contractual, that when the board once fixed her salary at $2,750 and she retained her position, and received payment at that rate for a time, there was created a contract of employment for life or good behavior by which the board of education agreed to pay to her for life or good behavior for her services as principal, $2,750, and which services for such payment she agreed to render and that as a consequence, without her consent, no change could thereafter be made in the terms of that contract. We may concede that she is an employé, and that her relation is contractual, but the question still remains what is the contract. The board of education is not a private contractor, but a governmental agency. It is a public municipal corporation. Gunnison v. Board of Education, 176 N. Y. 11, 68 N. E. 106. It derives its powers in the distribution of enormous sums of money, and in the control of the vast and important machinery, by which the state secures the education of its youth in the public schools of the city of New York solely from the law. Its powers, its duties, its contracts, express or implied, are such only as the law permits and provides for. The law provides for minimum salaries for the educational staff for various grades, and for varying periods of service, and within those limitations the board has no discretionary power. If the teacher shall have been approved after inspection and investigation as fit and meritorious, the law makes the contract and says such teacher must receive the minimum fixed by the law. Into the contract of employment is read the provisions of law. This plaintiff's contract, made by the law, and over which to this extent neither party has any control, is that she having been a woman principal of ten years' service, and having been approved as fit and meritorious, shall receive at least $2,500 per annum. But "all of the sections of the charter relating to the school system must be read in pari materia." Matter of Cusack v. Bd. of Education, 174 N. Y. 139, 66 N. E. 677, and the same law also provides:

"Each school board shall have power to adopt by-laws fixing the salaries of * * * principals * * *. The salaries fixed and established and duly payable in the different schools of the territory hereby consolidated as these salaries were on the 1st day of January, 1898, shall be and remain the salaries in the schools of the several boroughs, hereby constituted, until the same shall be changed or modified as provided for in this section." Section 1091, supra.

And, further:

"All * * * principals * * * shall continue to hold their respective positions and to be entitled to such compensation as is now provided or may hereafter be provided by the various school boards, subject to the limitations of this act." Section 1117, Charter 1897, Laws 1897, p. 404, c. 378.

If the contention of the plaintiff is correct, and her contract is of the nature which she claims, why then it is obvious that if it cannot be altered by the board of education, it cannot be altered by the act of the Legislature, for the Constitution of the United States provides that no state shall pass any law impairing the obligation of a contract. That the Legislature which passed these acts had no idea that any such relation existed between the school teachers and the board of education, appears from the latter part of the section last quoted, which, while it preserved the salaries theretofore fixed in the different schools of the territory consolidated, did so only until the same should be changed or modified as provided in the section, to wit, by the passage of by-laws fixing salaries by the school board, thus expressly recognizing the power to change. As pointed out by the Court of Appeals in the Callahan Case, supra, we are entitled to look at subsequent legislation on the subject for the purpose of interpreting the meaning of the statute, inasmuch as the revised charter provides that it is to be interpreted as a continuation of existing law, and not as a new enactment. Section 1101 of the revision of 1901 is, with slight change, section 1117 of the charter of 1897, and it provided that:

"Except as herein otherwise provided, the city superintendents, * * * and all principals, teachers and other members of the educational staff in the public school system of any part of the city of New York shall continue to hold their respective positions and shall be entitled to such compensation as is now provided or may hereafter be provided by the lawful authorities subject to change of title, to reassignment or to removal for cause as may be provided by law and subject to the right of the said board to abolish any unnecessary positions."

The plaintiff concedes under these provisions of the statute the continuing power of the board to fix by increasing the amount of her salary above the minimum. Her claim is based upon such action by the board; but she contends that having once fixed her salary, the board is for all time during her life or good behavior, so far as a reduction is concerned, functus officio. She cites in addition the final clause of the amendment of section 1091, c. 417, p. 883, of the Laws of 1899:

"No salary now paid to any public school teacher in the city of New York shall be reduced by the operation of this act."

But this action does not affect her, for there has been no reduction of the salary paid to her at the time of the passage of that act. The evident purpose of the clause was to prevent the schedule of minimum salaries fixed by the act itself resulting in reducing any existing salary and perhaps to limit the board in the passage of by-laws in the same way. It preserved the status quo. It was not addressed to the future. Her claim is that no matter how ill-advised or extravagant the action of the board may have been, no matter what the needs of the educational system may prove to be, no matter how the school funds may require to be redistributed, the power to alter her contract is gone. Compensation once "fixed" she claims is fixed. It is immovable, unalterable, nailed down. The words, "she claims," is not synonymous with regulate, but conveys the sense of absolute rest. But this is no

new word in the statutes affecting the city of New York; and, in construing statutory language it is proper to consider prior statutory use and meaning. Thus by section 97, c. 335, p. 510, of the Laws of 1873, repeated in the consolidation act as section 202, c. 410, p. 55, of the Laws of 1882:

"The salaries of all officers paid from the city treasury whose office existed on April 30th, 1873, that are not embraced in any department shall be fixed by the board of estimate and apportionment, such board may by a majority vote reduce any such salaries but shall not increase the salary of any office, the compensation of which then exceeded $3,000."

And the word is so used in other sections of Consolidation Act, §§ 200, 201, 203, 48, 1770. By section 56 of the charter of 1897 (Laws 1897, p. 23, c. 378) it is provided that:·

"The municipal assembly shall have power, upon the recommendation of the board of estimate and apportionment, to fix the salary of any officer or person whose compensation is paid out of the city treasury, irrespective of the amount fixed by this act, except that no change shall be made in the salary of an elected officer or head of a department during the term for which he was elected or appointed."

This section is amended by chapter 435, p. 1067, of the Laws of 1902 to read as follows:

"Salaries as fixed on the 1st day of January, 1902, shall continue in force until fixed by the board of aldermen as in this section provided, except as may be otherwise determined by the board of estimate and apportionment prior to the 1st day of May in the year 1902, under the provisions of section 10 hereof."

And on the same day, by chapter 436, p. 1068, of the Laws of 1902, the Legislature amended section 10 of the revised charter by adding the clause in italics to the following sentence:

"Between January 1st and May 1st in the year 1902 the board of estimate and apportionment shall have power from time to time to alter, modify and amend the budget for the year 1902; to change the titles, terms and conditions of appropriations contained therein; to add new appropriations and abolish any that may be found unnecessary; *and also upon the recommendation of the mayor or any borough president or head of any department, bureau, office, board or commission of the city of New York or of any of the counties embraced therein, to fix salaries in any of said offices, departments, bureaus, boards or commissions.*" See Matter of Hamburger v. Board of Estimate, 109 App. Div. 427, 96 N. Y. Supp. 130.

Section 1583 of the charter of 1897 provides that:

"The salaries of all county officers in the counties of New York, Kings, and Richmond, shall, unless .otherwise provided by law, be fixed by the board of estimate and apportionment, subject to approval by the municipal assembly."

Section 233:

"The salaries of all officers paid from the city treasury not embraced in any department shall be fixed by the municipal assembly and by the board of estimate and apportionment unless otherwise provided by law or by this act."

Section 1571 provides:

"The salaries or other compensation of said coroners shall be fixed by the board of estimate and apportionment and the municipal assembly."

Section 56 of the revised charter of 1901 (Laws 1901, p. 32, c. 466) provides:

"It shall be the duty of the board of aldermen upon the recommendation of the board of estimate and apportionment, to fix the salary of every officer or person whose compensation is paid out of the city treasury other than day laborers, and teachers, examiners and members of the supervising staff of the department of education, irrespective of the amount fixed by this act, except that no change shall be made in the salary of an elected officer or head of a department during his tenure of office."

Here is a provision for "fixing" by the board of aldermen salaries fixed by statute. Thus the statute itself destroys the contention that once fixed always fixed. Section 1583 of the charter of 1901, so far as material, is section 1583 of the charter of 1897 unaltered. Section 1543 of the same charter provides:

"The salaries or wages of all such officers, clerks, employees and subordinates in every department shall be such as shall be fixed by the board of aldermen upon the recommendation of the board of estimate and apportionment in the manner provided by this act."

I cannot find that it has ever been held under any of these various provisions, conferring power upon the board of estimate and apportionment and the board of aldermen or municipal assembly as the case might be, to fix salaries and wages; that the said bodies had exhausted their power over the officers and employés of the city when they had once fixed their compensation. On the contrary, the provision that they should not exercise such power over heads of departments and elected officers during the terms for which appointed or elected, would seem to show that there was a power conferred to reduce as to other officers and employés, and even in such instances unless prohibited by law. Again, the direct power conferred in some instances to reduce and in others where a minimum and a maximum salary was provided with the power of the board to fix between such limits, would seem to establish that in the contemplation of the Legislature the power was a continuing power. Indeed, when we consider the legislative character of these bodies no other conclusion can be arrived at but that, in the exercise of their governmental functions, the power to fix was merely the power to regulate, and was continuous. This power in respect to the schools has not been given to the board of aldermen or to the board of estimate and apportionment but is lodged in the board of education itself. But the fact that a power conferred by statute is exercised by one public body rather than another should cause no different construction to be placed upon the words granting the power, and it seems to me from a careful consideration of the sections of the statute under review, that it is clear that the Legislature has conferred upon the board of education the right to exercise its discretion from time to time in fixing the compensation of employés of the board, limited only by the provision in regard to the minimum salaries, as it was held in the Matter of Cusack v. Board of Education, 174 N. Y. 136, 66 N. E. 677, that the board had the right, in the exercise of its discretion, to abolish positions. The relator in that case, the principal of an evening school, based his claim upon the provisions of the same statute, and contended that section 1101 secured his tenure of office to the position from which he claimed to have been illegally removed. The court said:

"The very section of the charter upon which the relator depends for his tenure to the position from which he was removed, and to which he seeks to be reinstated, confers upon the board of education the right to abolish unnecessary positions."

—and denied his application for reinstatement.

If the relator's contractual right was affected by the provision of the statute giving this board power to abolish the position entirely, that provision must be read into his contract, and made a part thereof. It cannot be said that reserving the power to change a salary after it is once fixed is as great an invasion of vested rights as reserving the power to abolish the position and so destroy the right entirely. It follows that, although the plaintiff's relation is contractual, yet the terms of that implied contract are established by the statute which has conferred upon the board the continuing power to regulate salaries by by-laws within certain limits.

Therefore, the interlocutory judgment appealed from, sustaining the plaintiff's demurrer to the new matter contained in the answer herein, should be reversed, with costs to the appellant and the demurrer overruled, with leave to the plaintiff to withdraw her demurrer upon the payment of the costs in this court, and in the court below within 20 days.

PATTERSON, INGRAHAM, and HOUGHTON, JJ., concur.

LAUGHLIN, J. (concurring). I am of opinion that, after the school year commences, the salaries for that year of teachers accepting employment on the faith of the salary as then fixed cannot be affected during that school year by any change of salary subsequently made. There is an obligation until the Legislature sees fit to change the law, but not a contract, for the permanent employment of teachers so long as their services are required, and so long as they have not forfeited the right to continue as teachers. The obligation, however, in that respect is not mutual, and therefore is not, strictly speaking, a contract. The teacher only contracts for the single year, and may or may not continue thereafter. The duty of the municipality, erroneously, I think, called a contract, to continue the employment of the teacher for life or good behavior, is in the nature of a civil service regulation. The obligation is to re-employ the teacher from year to year, as if taken from an eligible list of the civil service. The salaries sought to be recovered here, as I understand the facts, embrace a period beyond the school year during which the change in salary was made. A teacher entering upon the service for the school year after the change in salary was made accepts the employment, subject to the salary then prescribed for the position.

In my view of the case, therefore, while the defense is not good in toto, it is good in part; and I concur with Mr. Justice CLARKE, for reversal.