[Civ. No. 4154.  Third Appellate District.—March 2, 1931.]

J. L. FIDLER, Appellant, v. BOARD OF TRUSTEES OF ROSEVILLE UNION HIGH SCHOOL et al., Respondents.

Butler, Van Dyke, Desmond & Harris for Appellant.

Orrin J. Lowell for Respondents.

MR. JUSTICE Pro Tem. McDANIEL Delivered the Opinion of the Court.—This is an appeal from a judgment in mandate proceedings. The appellant was petitioner in the trial court, seeking by mandate to compel the respondent Board of Trustees of the Roseville Union High School District, and the members thereof, to admit him to the use and occupation of his right as a permanent teacher, to teach in the respondent Union High School and to pay him the salary to which he claimed to be entitled, under the law, as such teacher. An alternative writ was issued and the respondents and defendants therein filed their answer, which not only met and traversed material averments in the petition, but affirmatively set up certain facts.

The findings and judgment were in favor of the respondents; a motion for a new trial was duly made and denied. At the trial no witnesses were sworn and certain facts, documentary exhibits and proposed testimony of witnesses were admitted upon stipulation; the oral objections to the introduction of testimony were reserved by appellant, and motions were made to strike out certain portions of the answer. The motions to strike portions were denied and all objections to testimony were overruled.

The following statement of facts contained in appellant's opening brief are conceded by respondents to be correct:

"The facts show that the appellant was employed in the Roseville Union High School in 1923 under a written contract, his status being that of a probationary teacher. His salary was fixed at that time at $2400 a year. It was stipulated that the form of the contract for 1923 was the same as the contract for 1924, except as to the amount of salary. In 1924 he was re-employed as probationary teacher, at a salary of $2700 a year. In 1925, on June 25, he was again employed under a written contract, and, according to law,

having served as a probationary teacher for two years, was classed as a permanent teacher, at a salary of $2700 a year. On June 9, 1926, another contract was entered into between the appellant and the respondent in which appellant was employed to serve as permanent teacher at a salary of $2800 a year. On June 1, 1927, another contract was entered into in writing between the parties, in which appellant was classed as a permanent teacher, at a salary of $2900 a year. On July 31, 1928, he was again employed under a written contract as a permanent teacher at a salary of $2900 a year.

"On May 16, 1929, the Board of Trustees of Roseville Union High School addressed a letter to appellant, in which they stated:

"'At a special meeting of the trustees of the Roseville Union High School, called for the purpose of electing teachers, it was decided to make a change in the vice-principalship.

"'You are herewith offered a teacher's contract for the year 1929–1930. Kindly notify the Board of your acceptance, or rejection, on or before June 8th, 1929.'

"With that letter was submitted a form of contract similar to the contracts previously submitted, except that the salary indicated therein was fixed at $2500 per year instead of $2900 per year. Appellant signed the contract submitted after changing the figures from $2500 to $2900, and returned it to the Board, with a letter stating that as a permanent teacher with his salary having been previously fixed and determined, he was entitled to receive a salary of $2900 a year. Following this, there was various correspondence between the Board and appellant, the Board maintaining its right to reduce the salary, and appellant insisting upon his right to teach, and presenting himself each day at the school and offering to serve, and demanding that classes be assigned to him.

"On September 14, 1929, a letter was addressed to appellant by respondents, in which was stated, among other things:

"'The teaching job is open to you and you may teach at once. The salary which the Board have fixed and which they believe is a legal salary under the circumstances and which they are willing to pay is the sum of $2500. If you

fail to commence teaching forthwith, the Board will be forced to the conclusion that you refuse employment.'·

"In answer to this letter appellant replied, saying, among other things:

" 'I am ready, as I have been since the opening of the term, to teach, and to perform my part of the contract of employment. No teaching work has been assigned to me. . . . I shall expect to be paid the sum to which I am legally entitled, whether it be twenty-five hundred dollars or twenty-nine hundred dollars.' . . .

"At the beginning of the school year, the appellant presented himself at the school, offered to teach, and demanded that he be assigned to classroom work. The principal of the high school, acting under the direction of the Board of Trustees, respondent herein, refused to permit appellant to teach, and refused to assign him to any classes or to any duties as a teacher, or to pay him any salary for any period of the current school year. The appellant continued to present himself at the school each morning thereafter with a similar demand, and met with a similar refusal.

"The respondent Board offered evidence over the objection of appellant that the reason for the increase in the salary of appellant prior to the current school year was that the appellant had been assigned to and had performed the duties of vice-principal in the school, and that the reason for the decrease in appellant's salary from $2900 to $2500 was that he was to be relieved from his duties as vice-principal during the current year; that it was intended that appellant should devote his entire time to classroom teaching; and it has been stipulated that he would have been assigned more classroom teaching than he had theretofore performed. It is conceded by all parties that no attempt has ever been made to discharge the appellant under the provisions of the Teacher's Tenure Act, and the evidence discloses that appellant is a thoroughly capable teacher."

The questions of law involved in this appeal are as follows: Is it true that—

### 1.

The decision and judgment is against law, in that there is no express statutory authority for a board of trustees of a union high school district to reduce the salary of a permanent teacher?

2.

The evidence is insufficient to support the verdict (judgment) for if under given circumstances, for cause, the Board .of Trustees should have the power to reduce the salary of a permanent teacher, no justifying circumstances exist in this case?

3.

The court erred in admitting in evidence over objection of petitioner testimony showing the petitioner to have occupied the position of vice-principal of the Roseville Union High School, for the reason that no such office or position is known to the law, and for the further reason that the written contracts of employment of the petitioner constitute the best evidence as to the nature of his employment?

■ The principal point relied upon in this appeal is presented by the first of the above questions suggested by appellant. At the time the controversy arose in May, 1929, the act of the legislature known as the Teacher's Tenure Act existed, as set out in section 1609 of the Political Code of California. (Stats. 1927, p. 1913.) The legislature of 1929 codified that law and references to it will now be found in the School Code of California, which went into effect on August 14, 1929. The annual school term, the subject of the controversy herein, began September 10, 1929. The final disagreement between the appellant and respondents, as shown by the letters herein set out, occurred in September, 1929. All references to the law of this case, therefore, will indicate the School Code of California.

The contention of the appellant appears to be that when a teacher in the public schools has once attained the status of a permanent teacher, and his salary as such teacher has been fixed by the board of trustees, such board thereafter shall have no power to reduce the salary; that there is a total lack of statutory authority permitting the school board to reduce the salary of a permanent teacher, and no judicial authority for said board so to do.

Section 5.530 is as follows: "Boards of school trustees, and city and city and county boards of education shall have power and it shall be their duty to fix and prescribe the duties to be performed by all persons in public school service in the school district."

Section 5.731 is as follows: "Boards of school trustees, and city, and city and county boards of education shall have power and it shall be their duty to fix and order paid the compensation of persons in public school service requiring certification qualifications, employed by such boards, unless the same be otherwise prescribed by law."

The first two paragraphs of section 5.734 are as follows: "In cities teachers of beginners shall be ranked in the salary schedule with the highest salaried teachers in the elementary grades of equal training and experience;

"Uniform allowance may be made in any schedule of salaries for years of training and for years of service."

The second paragraph is especially referred to in the argument.

Appellant contends that an analysis of these several sections will show that, while it was the intention of the legislature to empower boards of trustees to raise and thus to fix the salary of teachers, the power to reduce is withheld by implication, and that in no other provisions of the School Code, or the Political Code, is there to be found any provision, directly or inferentially, giving the school board the right to reduce the salary of a permanent teacher.

Respondents, of course, contend that correct interpretation of the same sections indicates that boards of trustees have a wide range of discretion, including not only the prescribing, fixing and assigning of duties to teachers, with power to relieve them of duties previously assigned to them, but, before contracts for the school year are actually made, may fix salaries, in the exercise of a sound discretion, according to the duties to be performed, keeping in mind the years of training and experience teachers may have had, and may either raise or lower salaries at the times and in the manner provided by law. Respondents do not contend, however, that there can be any arbitrary or unreasonable exercise by the board of the power to reduce the salary of a permanent teacher. If the board, in a given case, comes to the conclusion that a re-apportionment of duties and a change in appellant's salary is essential to accord with the change of duties, it would be valid to make the change in the legal exercise of authority.

Appellant contends that the teacher, once having attained a permanent status, is not subject to the board except as to

those matters governed by statute. Respondents contend: "That under the law the Board of Trustees has full and complete control over all teachers and employees employed by the School District, except as such control may be limited by statute," citing *Grigsby* v. *King*, 202 Cal. 299 [260 Pac. 789].

Considerable argument is devoted to the consideration of the proper definition of the word "fix", as used in the statute with reference to the compensation of teachers. As shown in the foregoing statement, the appellant for years past had successive contracts with the Board of Trustees fixing and regulating his compensation in each year of his employment. He received successive increases of salary, so that appellant, while contending that the word "fix" as used in the statute, considered in conjunction with the second paragraph of section 5.734, which says, "Uniform allowance may be made in any schedule of salaries for years of training and for years of service", necessarily imports by implication that the trustees may raise salaries but may not lower them.

Appellant argues that the respondents "endeavor to convince the court that to 'fix' means to 'change'. Logically, the conception of fixity and of change are mutually exclusive. Etymologically, the word 'fix' is derived from the Latin 'figo', meaning 'to fasten'. (Standard Dictionary of the English Language.) In ordinary parlance the word 'fix' excludes the idea of change. In this instance the power to fix, coupled with the power to raise, excludes the power to lower salaries."

The last sentence just quoted while terse, if not sententious, and though syllogistic in form, appears to us illogical in conclusion. If the word "fix" excludes the idea of "change", how can it be coupled with the power to raise? If it be so coupled, however, why does it exclude the power to lower salaries?

The entire argument of appellant is well met and appears to be overthrown by the well-considered case (under a statute similar to the permanent tenure law for teachers under the School Code of California), entitled *Buckbee* v. *Board of Education*, 115 App. Div. 366 [100 N. Y. Supp. 943]. It was held in that case that the statute requiring a board of education to fix the compensation of permanent teachers

conferred upon the board the right, in the exercise of its discretion, from time to time, to regulate such compensation, whether the result was to increase or decrease the salaries of teachers. That case has been frequently cited with approval in a number of other New York cases, and it has been affirmed by the Court of Appeals in 187 N. Y. 544 [80 N. E. 1106].

In *Brigham* v. *City of New York,* 191 App. Div. 866 [182 N. Y. Supp. 145, 146], which cites *Buckbee* v. *Board of Education, supra,* it is said: ''The provision that a civil service employee shall not be removed or reduced to a lower grade without charges and upon a hearing was intended to protect individual employees from arbitrary and unjust action on the part of their superiors. It was not intended thereby to limit the power of the proper officials of the city so that, having fixed the salary of a position at a certain figure, which, under the classification of the civil service commission was placed in a certain grade, they could not reduce it to an amount which would carry that position into a lower grade, providing the reduction was not unjust, made in good faith, and not for the purpose of discriminating against any single employee. . . . The power to fix salaries does not mean that, where the board of aldermen have designated a salary to be paid to an employe of the city, it cannot thereafter change the salary. As was said by Mr. Justice Clarke: 'When we consider the legislative character of these bodies, no other conclusion can be arrived at but that in the exercise of their governmental functions the power to fix was merely the power to regulate, and was continuous.' ''

*Rudd* v. *Cropsey,* 159 App. Div. 275 [144 N. Y. Supp. 198], holds that where there is no positive law against reduction in salaries, ''In such case, the power to fix a salary carries power to reduce it,'' citing *Sauerbrunn* v. *Board of Education,* 150 App. Div. 507 [135 N. Y. Supp. 85]; affirmed on opinion below, 208 N. Y. 550 [101 N. E. 1120]; *Buckbee* v. *Board of Education, supra.*

It is unnecessary to follow the argument based upon appellant's theory that boards of education and boards of trustees, etc., being creatures of statutes have only the powers expressly conferred and have no implied powers, for the reason that we think that the statute in this case does

expressly authorize employment by contract made between the teacher and the district. The entire argument of appellant is based upon this view that appellant had acquired the status, as far back as 1925, of a permanent teacher, that the Board of Trustees entered into a contract with him, whereby his compensation was fixed at a certain figure, that a contractual relationship was created, which would continue from year to year, unless changed by consent, and changed by increases in salary only.

An examination of each contract made between the Board of Trustees and appellant demonstrates that it was a contract for one year only, in so far as compensation was concerned. A distinction must be kept in mind at all times in consideration of the instant case between the right to permanent tenure of the office and the right to compensation during each year. Appellant is perfectly aware of that distinction, for he says in his closing brief: "The distinction between appellant's right to his status as a permanent teacher and his right to a salary as such teacher must be kept clearly in mind." It is an important distinction, for his status as a permanent teacher is conferred upon him by the statute, and is not dependent upon contract; while his right to compensation is a proper subject of contract. Appellant has recognized this by making his successive contracts with the trustees, and even in this controversy, as shown by his letter of September 17th, above quoted, in fact, was requesting the said Board of Trustees again to contract with him as to his compensation, at the rate of $2,900 per year for the school year of 1929–1930.

In this connection, the concurring opinion of Judge Laughlin, found on page 950 of 100 N. Y. Supp. of *Buckbee* v. *Board of Education, supra,* is pertinent and illuminating: "I am of the opinion that, after the school year commences, the salaries for that year of teachers accepting employment on the faith of the salary as then fixed cannot be affected during that school year by any change of salary subsequently made. There is an obligation until the legislature sees fit to change the law, but not a contract, for the permanent employment of teachers so long as their services are required, and so long as they have not forfeited the right to continue as teachers. The obligation, however, in that respect is not mutual, and therefore is not, strictly speaking,

a contract. The teacher only contracts for the single year, and may or may not continue thereafter. The duty of the municipality, erroneously, I think, called a contract, to continue the employment of the teacher for life or good behavior, is in the nature of a civil service regulation. The obligation is to re-employ the teacher from year to year, as if taken from an eligible list of the civil service. The salaries sought to be recovered here, as I understand the facts, embrace a period beyond the school year during which the change in salary was made. A teacher entering upon the service for the school year after the change in salary was made accepts the employment, subject to the salary then prescribed for the position.''

The erroneous hypothesis upon which appellant's entire argument as to his right to the salary of $2,900 for the school year of 1929–1930, rests, is that when that figure was fixed and agreed to in the contract of 1928–1929, it continued beyond that last-named school year. By an inspection of the contract itself, it will be seen that the school year begins September 10, 1928, and consists of not less than 170 days of actual teaching, and has printed upon it, "each contract shall be renewed annually".

The entire system of support and maintenance of the public schools of California, as shown by the School Code, contemplates that each year's expenditures shall be paid out of the income and revenue of that year. Section 4.540 of the School Code, for instance, requires an estimate to be made by every high school board of the amount of money requisite for maintaining the high school in the ensuing school year, which estimate must be filed with the county superintendent at least 15 days before the first day of the month in which the board of supervisors must levy taxes for county purposes.

Section 4.700 provides as follows: "Boards of school trustees and city boards of education must use the school moneys received from the state and county apportionments exclusively for the support of schools for that school year, until at least an eight months' school has been maintained." And all of the provisions relating to the expenditure of moneys by governmental agencies seem to contemplate and require that the expenditures be kept within the amount

required for governmental purposes for the current year. Under section 4.870, the state superintendent of schools makes his annual apportionment of moneys to the various high school districts of the state.

If these views are correct, then at the time the present controversy arose, there was actually in existence no contract relating to the compensation of appellant as a permanent teacher, for 1929–1930.

We quote from *Martin* v. *Fisher,* 108 Cal. App. 34 [291 Pac. 276, 278] : "The position of a teacher in the public schools of California is not an office. It is an employment by contract made between the teacher and district. *Leymel* v. *Johnson,* 105 Cal. App. 694 [288 Pac. 858]. The becoming a permanent teacher, and the continuation of this employment, is a right given by statute, which right can be terminated or forfeited in the manner provided by law. (*Grigsby* v. *King,* 202 Cal. 299 [260 Pac. 789] ; *Saxton* v. *Board of Education,* 206 Cal. 758 [276 Pac. 998].) The relation between the district and the teacher is that of employer and employee and is created by contract which must be dependent, for its terms and conditions, upon the authority granted the district by law and the limitations placed by law upon its power to contract."

If the board, in reclassifying the duties to be performed in the grade or particular school department, acted in good faith, and then fixed the compensation at $2,500 instead of $2,900, it was acting within the limits of expressly conferred power.

The appellant had the unquestioned and admitted right to continue in his status as a permanent teacher and to accept the offer at a reduced salary or reject it, as he pleased.

It is argued under the second question of law by appellant, however, that no circumstances existed in this case justifying the Board of Trustees in their action, whereby they reduced the salary of his position. The one obvious answer to that proposition is, as shown, at the time the change was made, which change was for the succeeding year's salary, appellant's existing contract was not affected nor impaired. For the succeeding year, no contract with fixed salary existed. However, if the board must prove that, in reclassifying the duties of the position, it acted with sound

discretion, it appears from the evidence admitted and the facts found by the court in support of respondents' affirmative defense, that the trustees for the fiscal year 1929–1930 discontinued the horticultural exhibits, by reason of the lack of attendance in said subjects and the said Roseville Union High School lost thereby the federal state aid it had theretofore received under the statute, known as the Smith-Hughes bill. It further appears that when appellant carried out his contract for the year 1928–1929, in addition to his classroom work as teacher therein, he had performed duties of an administrative or executive character, under the designation or title of vice-principal.

At the trial in the superior court the following stipulation was made:

"It is stipulated that the correct figure for the increase in the salary of the teacher appointed as vice-principal, as mentioned on page 2 of the Reporter's Transcript, is the sum of $600 and not the sum of $100.

"It is stipulated that, subject to the objections of petitioner specified in the Reporter's Transcript, witnesses for respondents would testify: That petitioner, during the past year's service for respondents, taught classes in the forenoon and devoted the entire afternoon to administrative functions. During the afternoon of the school days the principal visited classrooms, etc., and petitioner occupied the office rooms of the principal and performed the executive and administrative functions usually performed by the principal. This performance by him of the usual functions of the principal was by virtue of his assignment to the position as vice-principal and the said executive and administrative functions were the duties from which petitioner was relieved at the end of the past school year. In place of performing these duties, it was intended for the ensuing year that petitioner would be available for class teaching during the afternoon of each day as well as the forenoon."

Subject to the objections of appellant, there was admitted on the trial testimony that the salary of $2,500 per year, as fixed by respondent board, was in all respects a reasonable salary and was ample and sufficient compensation for the services to be performed by petitioner as teacher during the school year 1929–1930.

308

Accepting the foregoing as showing the considerations influencing the trustees to re-arrange the duties of the position formerly held by appellant and as properly before the court, we are unable to see that there was any abuse of discretion or any improper conduct on the part of the trustees in re-adjusting the salary of the position. We are, therefore, of the opinion that the circumstances explain and justify the reduction and that it was not arbitrary nor discriminatory, nor a violation of the Teachers' Tenure Act.

We come now to the third question of law presented by this appeal:

Whether or not the court erred in admitting evidence over the objection of petitioner, showing the petitioner to have occupied the office of vice-principal of the Roseville Union High School, for the reason that no such office or position is known to the law, and for the further reason that the recent contract of employment of the petitioner constituted the best evidence of the nature of his employment. We think the court correctly ruled.

The contract of 1928–1929 and the preceding contracts of employment each set out that appellant was employed as a permanent teacher, naming the compensation for the year, the monthly installments of salary, the minimum number of days to be taught for the year, and does not specifically undertake to enumerate any particular duties. It is true that the statute provides that the high school boards shall prepare and control the course of study. (Section 3.800, School Code.)

Section 3.805 sets out what may be included in such high school course of study. All these subjects named in the courses of study provided are not taught by one teacher, but, naturally, are assigned to and divided among many different teachers. Other duties are defined by statute. The evidence was offered and admitted, not for the purpose of altering or modifying any contract, but to show primarily and principally that the Board of Trustees acted with reasonable discretion in re-arranging the work to be done in the year 1929–1930. Whether or not the board had the legal right to pay appellant for any services he may have rendered as vice-principal, we need not at this time decide. He voluntarily performed such services; in fact, it seems

to have been by mutual consent of the parties herein, though the strict purview of the contract of employment did not state that appellant should act as such vice-principal, if he had been so acting under his previous contract as a permanent teacher. Under these circumstances, evidence of what actually was done and the construction placed upon the meaning of the contract by the above parties thereto, in our judgment, was admissible. Section 1647 of the Civil Code provides: "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." "Although parol evidence is not admissible to supply omissions or introduce terms, or to contradict, alter or vary a written instrument, it is admissible for the purpose of identifying the subject matter to which the writing refers." (6 Cal. Jur. 258, citations and note 8.)

Appellant has cited no authority in support of his objections, and we, therefore, need not extend consideration on this point.

■ There is another question which appears to us to be merely a question of fact, presented by appellant in his closing brief. It is contended that appellant can be deprived of his status as a permanent teacher by discharge only in the manner provided by law or by resignation. It is conceded that a refusal to teach is, of course, tantamount to a resignation. It is conceded that he has never been formally discharged. Appellant contends that it is also conceded that he never refused to teach, but, in fact, has always been ready, able and anxious to teach. This last statement that he "never refused to teach" seems to us to be actually in dispute under the evidence, and is disputed in the evidence as well as in the argument. It is in fact an important question in the case.

It is strongly urged by appellant that, in his letter of September 17, 1929, appellant indicated no change in his position with reference to the controversy. With respect to this matter, whether the said letter represented any change of position on the part of appellant or not, it, by its own terms, does show it was not an unqualified or unlimited acceptance of the offer to renew the contract at the $2,500 salary.

On May 16, 1929, the Board of Trustees wrote appellant that it had decided to make a change in the vice-principalship. He was offered a teacher's contract for the year 1929–1930, a copy being inclosed with the letter. He was asked to notify the board of his acceptance or rejection on or before June 8, 1929. He replied on June 7, 1929, returning the contract, the form of which had been sent to him, stating:

"June 7, 1929.

"To the Board of Trustees of
  "Roseville Union High School,
    "Roseville, California.
      "Attention: E. C. Bedell, Clerk.

"Gentlemen: I acknowledge receipt of your letter of May 16th, enclosing form of contract for my employment as permanent teacher in the Roseville Union High School for the coming year, noting from your letter that my acceptance or rejection of the contract was required on or before June 8, 1929.

"The contract as submitted to me contains an error in the amount of salary to be paid. My status in the school is that of a permanent teacher, and my salary, as previously established by your Board, is $2900 per year and not $2500. I have, therefore, taken the liberty of amending the contract, and I call your attention to the change made by me in the offer of employment, where I have corrected the salary from $2500 to be paid in ten payments of $250 each, to $2900, to be paid in ten payments of $290 each. The offer as thus corrected is accepted by me, and you will find my acceptance endorsed on the contract which I return to you herewith for your verification.

"You will please understand my position to be, that, having been classified by your Board as a permanent teacher under the teacher's tenure act, at a definite salary fixed by your Board in previous contracts, that your Board is now without power to reduce that salary arbitrarily. I trust you will find my suggestions in order, and that the contract as amended will be accepted.

"Very truly yours,
  "J. L. FIDLER."

On June 10, 1929, the board wrote him as follows:

"Mr. J. L. Fidler,

"Roseville, California.

"Dear Sir: This will inform you that your offer of June 7th is not acceptable to the Board, and has been rejected. We understand that you have rejected our offer of contract.

"Yours truly,

"E. C. BEDELL, Clerk."

On June 17, 1929, appellant wrote the following:

"To the Board of Trustees of

"Roseville Union High School,

"Roseville, California.

"Gentlemen: This will acknowledge receipt of your letter of June 10, 1929, regarding my employment as a teacher in the Roseville Union High School for the coming year. In your letter you state as follows: 'We understand that you have rejected our offer of contract.' I have *refused your offer of contract,* the grounds of my refusal being set forth in my previous letter to you. But, however, I do not reject my right to continue as a teacher in the Roseville Union High School under my privileges and status as a permanent teacher in that school. I am a permanent teacher in the Roseville Union High School under the teacher's tenure act. My standing as such, and my salary or rate of compensation, has become fixed. You are without power to change that status or that rate of compensation except for cause shown, and under the procedure indicated by Subdivision 5 of Section 1609 of the Political Code of the State of California.

"Therefore, you are advised that I am holding myself in readiness to continue to teach in the Roseville Union High School this coming term, upon the same terms and at the same salary and pay as last year, and shall be present on the opening of the school term, prepared to take up my duties, as heretofore.

"Yours very truly,

"J. L. FIDLER."

We think these letters manifest a refusal on the part of appellant to accept the offered contract. Conceding, however, only for the purpose of discussion, appellant's contention, that he was willing to work for $2,500 per year, leav-

ing the amount of his compensation to be determined later by litigation, or otherwise, to be meritorious, it is met and overcome by conflicting evidence, for it was stipulated that witnesses would testify that *by reason of the refusal of petitioner to accept the precise terms of the offer of respondents, and by reason of the position and demands of petitioner,* respondents did on September 27th make final arrangements for the performance of the teaching duties to have been assigned to petitioner, and from that date, the offer of respondents to employ petitioner at an agreed salary of $2,500 per year was deemed finally and conclusively rejected by petitioner, and thereafter was no longer subject to acceptance.

This shows a sharp conflict in the evidence, if appellant's interpretation of the appellant's offer to continue teaching be correct. That conflict was resolved against appellant by the trial court's finding that appellant refused to continue teaching. As expressed by appellant, ''a refusal to teach is, of course, tantamount to a resignation''. The finding upon conflicting evidence is binding upon this court.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 1, 1931.