[Civ. No. 902.   Fifth Dist.   June 14, 1968.]

ALEX EDWARD BROWN, Plaintiff and Appellant, v. HANFORD ELEMENTARY SCHOOL BOARD et al., Defendants and Respondents.

Alex Edward Brown, in pro. per., for Plaintiff and Appellant.

John G. O'Rourke, District Attorney, and Frank M. Finn, Deputy District Attorney, for Defendants and Respondents.

CONLEY, P. J.—This is an appeal from the judgment of the trial court denying a writ of mandate to compel the board of trustees of Hanford Elementary School District to restore in salary to each of two school teachers the sum of $200 per annum in addition to the pay already provided by contract for the school year 1964-65. These teachers are Billie Bartlow and Mary McNeel Brown (wife of Alex Edward Brown); while they testified at the hearing below in favor of the issuance of the writ, neither of them is a party to the proceedings. The petitioner is not an attorney at law; he justifies his request for a writ of mandate on the ground that he is a resident and taxpayer of Kings County and entitled to ask for this relief as a citizen who fears that if his request is not granted the standing of the educational institutions in the community will suffer and the educational system of Kings County will be vitally injured. While it is doubtful, in the circumstances, whether he has the right to prosecute this proceeding in such guise, we shall pass over that question inasmuch as a demurrer to the petition was overruled; the district attorney has stipulated that petitioner is properly in court and the trial judge has found that he has the standing to ask for the relief which he seeks.

Counsel have agreed upon a settled statement in lieu of transcripts on appeal (rule 6 of Cal.Rules of Court). This condensed statement shows that the board of trustees of the Hanford elementary schools, in fixing the salaries of the two teachers involved for the school year 1956-57, ordered that each of them be paid $200 per year in addition to the salary for teachers in general elementary grades on recognizing that they each held a valid credential to teach mentally retarded pupils issued by the department of education pursuant to section 13152 of the Education Code, and also that such an annual contract for similarly increased salary was executed in each succeeding year up to and including 1963-64; it is alleged, however, that in the contract for the 1964-65 year, the board eliminated the extra $200 formerly paid to each of these teachers. Incidentally, the two teachers were nevertheless given additional compensation for the work to be performed

by them during that year in conformity with pay increases given to other teachers; Billie Bartlow received a raise in pay of $250.04 per year after deletion of the $200 bonus, previously received, and Mary McNeel Brown was afforded a raise in pay of $275.08 per year after the elimination of her $200 given in previous years for the purpose of teaching mentally retarded pupils. Each of the teachers signed a contract with the school board for the new pay schedule and a raise was also given to other teachers in the same classification. ■ The question thus reduces itself to this: did the teachers of mentally-retarded pupils in the Hanford Elementary School District during the school years 1956-57 through 1963-64, by contracting annually for a yearly salary based on the current salary classification schedule plus a $200 annual increment or bonus, gain tenure not only as permanent teachers but also in a salary classification which included the $200 bonus? The answer is "No."

In *San Diego Federation of Teachers* v. *Board of Education,* 216 Cal.App.2d 758, 762 [31 Cal.Rptr. 146] : "Subject to designated minimum requirements, a city board of education is vested by statute with authority to fix the compensation to be paid to teachers (Ed. Code, §§ 13502-13525), including those who have attained a permanent classification [citation], and in the exercise of that authority may adopt a schedule increasing or decreasing the amount of compensation previously paid, providing (1) it is not arbitrary, discriminatory, or unreasonable; (2) any allowance therein based upon years of training and experience is uniform and subject to reasonable classification; and (3) it is adopted prior to the beginning of the school year. . . ." *Fidler* v. *Board of Trustees,* 112 Cal.App. 296, 300 [296 P. 912], contains an analysis of the situation and a holding directly contrary to appellant's contention; in the opinion, it is said: "The contention of the appellant appears to be that when a teacher in the public schools has once attained the status of a permanent teacher, and his salary as such teacher has been fixed by the board of trustees, such board thereafter shall have no power to reduce the salary; that there is a total lack of statutory authority permitting the school board to reduce the salary of a permanent teacher, and no judicial authority for said board so to do."

The court went on to point out that section 5.731 of the School Code of California then provided as follows: (Page 301.) "Boards of school trustees, and city, and city and county boards of education shall have power and it shall be their

duty to fix and order paid the compensation of persons in public school service requiring certification qualifications, employed by such boards, unless the same be otherwise prescribed by law.''[1]

The court then stated that appellant in that case contended that analysis of these several sections would show that, while it was the intention of the Legislature to empower boards of trustees to raise and thus to ''fix'' the salary of teachers, the power to reduce was withheld by implication, and that there was no other code provision directly or inferentially giving a school board the right to reduce the salary of a permanent teacher. (Page 301.) The court discussed at some length the argument of the teacher that when the law gave school boards the power to ''fix'' salaries of teachers, it meant the power to fasten them, and excluded the power to lower salaries. The court pointed out that if the word ''fix'' excludes the idea of change, it could not logically be coupled with the power to raise (page 302), and continued: ''The entire argument of appellant is well met and appears to be overthrown by the well-considered case (under a statute similar to the permanent tenure law for teachers under the School Code of California), entitled *Buckbee* v. *Board of Education,* 115 App. Div. 366 [100 N.Y.S. 943]. It was held in that case that the statute requiring a board of education to fix the compensation of permanent teachers conferred upon the board the right, in the exercise of its discretion, from time to time, to regulate such compensation, whether the result was to increase or decrease the salaries of teachers. That case has been frequently cited with approval in a number of other New York cases, and it has been affirmed by the Court of Appeals in 187 N.Y. 544 [80 N.E. 1106].''

The court in *Fidler* continues at page 304: ''An examination of each contract made between the Board of Trustees and appellant demonstrates that it was a contract for one year only, in so far as compensation was concerned. A distinction must be kept in mind at all times in consideration of the instant case between the right to permanent tenure of the office and the right to compensation during each year. . . . It is an important distinction, for his status as a permanent

---

[1]*Education Code,* section 13502:

''The governing board of any school district shall fix and order paid the compensation of persons in public school service requiring certification qualifications employed by the board unless otherwise prescribed by law.''

teacher is conferred upon him by the statute, and is not dependent upon contract; while his right to compensation is a proper subject of contract. Appellant has recognized this by making his successive contracts with the trustees, . . .''

The case stands for the principle that under the code the board could, in the exercise of a reasonable discretion and before the beginning of the school year, reduce the salary of a permanent teacher with whom it had contracted in previous years to teach at a higher salary.

*Kacsur* v. *Board of Trustees,* 18 Cal.2d 586, 591 [116 P.2d 593], holds: ''It is now well established that a permanent teacher has no vested right to a particular salary and that such salary may be changed by the administrative authority.''

In *Chambers* v. *Davis,* 131 Cal.App. 500, 508 [22 P.2d 27], it is said: ''There can be no doubt the board possesses a reasonable discretion in determining the amount of compensation to be paid to teachers under their jurisdiction. Except for a clear abuse of this discretion the amount of salary which is allowed by the board may not be interfered with by a court.''

While it is probably unnecessary to cite any cases from other states, the factual situation in *Buckbee* v. *Board of Education,* 115 App.Div. 366 [100 N.Y.S. 943, 950], so closely resembles the present problem that we quote the following from the concurring opinion of Laughlin, J.: ''I am of [the] opinion that, after the school year commences, the salaries for that year of teachers accepting employment on the faith of the salary as then fixed cannot be affected during that school year by any change of salary subsequently made. There is an obligation until the Legislature sees fit to change the law, but not a contract, for the permanent employment of teachers so long as their services are required, and so long as they have not forfeited the right to continue as teachers. The obligation, however, in that respect is not mutual, and therefore is not, strictly speaking, a contract. The teacher only contracts for the single year, and may or may not continue thereafter. The duty of the municipality, erroneously, I think, called a contract, to continue the employment of the teacher for life or good behavior, is in the nature of a civil service regulation. The obligation is to re-employ the teacher from year to year, as if taken from an eligible list of the civil service. The salaries sought to be recovered here, as I understand the facts, embrace a period beyond the school year during which the change in salary was made. A teacher entering upon the serv-

ice for the school year after the change in salary was made accepts the employment, subject to the salary then prescribed for the position.''

The case principally relied upon by petitioner, *Aebli* v. *Board of Education*, 62 Cal.App.2d 706 [145 P.2d 601], holds that once a contract is made by the board with a teacher at the beginning of a school year, the board cannot thereafter during such year go back and amend that contract through unilateral action by reducing the pay agreed to be made to the teacher; this holding is sound, but it does not control here as the basic facts are fundamentally different.

The trial judge found that the salary schedule for 1964-65 was not arbitrary, discriminatory or unreasonable and that allowances therein were properly based upon the number of years of training and the experience of the specific teacher and that such allowances were uniform and subject to reasonable classification. The court found also that the salary schedule for 1964-65 was adopted prior to the beginning of the school year; that the failure to include the bonus which had previously been given was not discriminatory, arbitrary or unreasonable. The court further determined that the special education teachers kept the classifications which they had previously held as well as their positions and received the step and the classification benefits to which they were entitled. The bonus which had been granted them from year to year because of a shortage of instructors in their particular field at those specific times was not applicable, because the shortage no longer persisted, and that the special education teachers in the year in question were on a salary and classification level that gave them full credit for their special education and the credentials which they had earned.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 8, 1968.